Robert E. MARTIN, Jr., Plaintiff,

v.

TOWN OF WESTPORT and Stephen
J. Edwards, Defendants.

No. 3:06CV00674 (DJS).

United States District Court,
D. Connecticut.

June 12, 2008.

Ikechukwu Umeugo, Umeugo & Assoc., West Haven, CT, for Plaintiff.

Johanna G. Zelman, Howd & Ludorf, Michael J. Rose, Rose Kallor, LLP, Hartford, CT, for Defendants.

### MEMORANDUM OF DECISION AND ORDER

DOMINIC J. SQUATRITO, District Judge.

The plaintiff, Robert E. Martin, Jr. ("Martin") brings this diversity action

against the defendants, the Town of Westport ("the Town") and Stephen J. Edwards ("Edwards") (collectively, "the Defendants") pursuant to the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a–60 *et seq.* ("CFEPA"), alleging discrimination and harassment based on his race, color, national background, and disabilities; and retaliation for opposing discriminatory employment practices. Now pending before the court are the Defendants' motions summary judgment (dkt. # s 18 & 20) pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."). For the reasons that hereafter follow, both motions for summary judgment (**dkt. # s 18 & 20**) are **GRANTED.**

## I. THE PLAINTIFF'S SUBMISSIONS

Before setting forth the background facts of this case, the court must first address the Defendants' joint motion to strike (dkt.# 28), whereby the Defendants seek to strike portions of Martin's affidavit and Local Rule 56(a) Statement ("Martin's Local Rule Statement"), which were submitted with his opposition to the summary judgment motions. The court begins by noting that it is unclear as to whether parties can or should use motions to strike to challenge materials submitted in support of or opposition to summary judgment. The Federal Rules of Civil Procedure do not explicitly allow motions to strike for such a purpose. Rule 12(f) reads that, upon a motion or the court's own initiative, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R.Civ.P. 12(f). Affidavits and Local Rule

56(a) Statements are not "pleadings" under the Federal Rules. *See* Fed.R.Civ.P. 7(a). Moreover, Rule 56, which governs summary judgment, does not provide a "motion to strike" as a tool in the summary judgment process. *See* Fed.R.Civ.P. 56.

Nevertheless, it has become commonplace for parties to submit motions to strike during summary judgment. Moreover, not only have judges oftentimes entertained such motions, they have held that such motions are proper when challenging materials submitted during the summary judgment process. *See, e.g., Merry Charters, LLC v. Town of Stonington,* 342 F.Supp.2d 69, 75 (D.Conn.2004) (" 'A motion to strike is the correct vehicle to challenge materials submitted in connection with a summary judgment motion.' ") (quoting *Newport Elec., Inc. v. Newport Corp.,* 157 F.Supp.2d 202, 208 (D.Conn.2001)).[1]

On the other hand, other judges have noted their displeasure with parties submitting motions to strike during summary judgment. *See, e.g., Ricci v. Destefano,* No. 3:04 CV 1109 JBA, 2006 WL 2666081 (D.Conn. Sept.15, 2006). In *Ricci,* the defendants moved to strike portions of the plaintiffs' Local Rule 56(a) Statement and accompanying evidence. *See id.* at *1. In ruling on that motion, the Honorable Janet Bond Arterton noted that "Rule 12(f) allows a court to strike pleadings only. Declarations and affidavits are not pleadings. . . . Therefore it is inappropriate to strike material contained in exhibits to motions." *Id.* (internal citation and quotation marks omitted).

Judge Arterton also noted that "[n]otwithstanding litigants' frequent use of mo-

---

1. The undersigned in no way intends to impugn the work or reasoning of other judges within the district, and freely admits that he himself has entertained such motions in the

past. *See Webster v. Pomperaug Regional School Dist. 15,* No. 3:04CV1265(DJS), 2007 WL 987539, at *6 (D.Conn. Mar.30, 2007).

tions to strike portions of the opponent's Local Rule 56(a) Statement, and evidence in support, Local Rule 56 neither authorizes such motions nor contemplates them as an appropriate remedy for a violation of the rule." *Id.* at *2. Rather, "[i]f a party wishes to argue that an asserted material fact is not supported by the evidence, that party may do so in its summary judgment briefing." *Id.* In addition,

> The Local Rule 56(a) Statement requirement was adopted to supplement the summary judgment briefing and to focus on which issues the parties dispute and which are uncontested. Thus, a party's responsive statement to an opponent's Rule 56(a) Statement is not a vehicle for analyzing the admissibility of the opponent's evidence or criticizing the opponent's characterizations of that evidence; it is rather a vehicle for alerting the Court to areas of *fact* that are claimed to be disputed or undisputed. Striking paragraphs of the Statement provides no assistance to the Court with this endeavor.

*Id.* (emphasis in original). Most importantly, Judge Arterton pointed out that because Local Rule 56(a) requires a court to consider only those statements of fact that are supported by the evidence, "[p]arties should assume that courts will undertake this obligation faithfully and fully review the proffered evidence of record and draw appropriate conclusions." *Id.* As a result, "striking a Local Rule 56(a) Statement is unnecessary since a court must not accept any aspect of a Rule 56(a) Statement that is not rooted in the evidence." *Id.*

The undersigned is inclined to agree with Judge Arterton that, in the context of summary judgment, motions to strike "are unnecessary and produce only redundant statements by the court that it has not relied on such inadmissible evidence in deciding the summary judgment motion." *Id.* Here, the court sees no need to "strike" statements from Martin's affidavit. Most of the statements at issue involve Martin's assertions that he was discriminated against, retaliated against, and harassed. It is no surprise that Martin would make such claims in a civil rights case. The Defendants should have faith, however, that the court knows the difference between admissible and non-admissible evidence, and would not base a summary judgment decision simply upon the self-serving *ipse dixit* of a particular party. Thus, with regard to Martin's affidavit, the Defendants' joint motion to strike (**dkt.# 28**) is **DENIED as moot.**

For the same reasons, the Defendants' joint motion to strike (**dkt.# 28**) is **DENIED as moot** with regard to Martin's Local Rule Statement. This does not mean, however, that the court shall ignore the deficiencies in Martin's Local Rule Statement. Rule 56(a)(1) of the Local Rules of Civil Procedure for the District of Connecticut ("D.Conn.L.Civ. R.") provides that "[t]here shall be annexed to a motion for summary judgment a document entitled 'Local Rule 56(a)1 Statement,' which sets forth in separately numbered paragraphs ... a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." D. Conn. L. Civ. R. 56(a)(1). Under Local Rule 56(a)(2),

> [t]he papers opposing a motion for summary judgment shall include a document entitled "Local Rule 56(a)2 Statement," which states in separately numbered paragraphs ... corresponding to the paragraphs contained in the moving party's Local Rule 56(a)1 Statement whether each of the facts asserted by the moving party is admitted or denied.

D. Conn. L. Civ. R. 56(a)(2). In a Local Rule 56(a)(2) Statement, the party oppos-

ing summary judgment must also set forth, in a separate section, "Disputed Issues of Material Fact." D. Conn. L. Civ. R. 56(a)(2). "All material facts set forth in [the moving party's Local Rule 56(a)1] [S]tatement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)2." D. Conn. L. Civ. R. 56(a)(1).

Furthermore, pursuant to Local Rule 56(a)(3),

> Each statement of material fact by a movant in a Local Rule 56(a)(1) Statement, or by an opponent in an Local Rule 56(a)(2) Statement, and each denial in an opponent's Local Rule 56(a)(2) Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial.

D. Conn. L. Civ. R. 56(a)(3). "[F]ailure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming certain facts that are supported by the evidence admitted in accordance with Rule 56(a)(1). . . ." D. Conn. L. Civ. R. 56(a)(3).

The court first notes that the Defendant's Joint Local Rule 56(a)(1) Statement ("the Defendant's Local Rule Statement") contains 128 paragraphed statements of fact. Martin admitted to sixty-two of those statements. As for the remaining statements, Martin has either denied them in full, or admitted them in part and denied them in part. Martin asserts that he provided specific citations in his Local Rule Statement. With regard to over fifty of his denials or partial denials, however, Martin is patently incorrect, as those responses provided no citations to the record.

Martin also claims that his obligation to provide "specific citations" applies only when citing to affidavits, responses to discovery requests, depositions, or other transcripts. This is plainly wrong. Local Rule 56(a) clearly requires that a denial in a Rule 56(a)(2) Statement "must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." D. Conn. L. Civ. R. 56(a)(3). That is, Martin could cite to affidavits or any admissible evidence, not only responses to discovery requests, depositions, or other transcripts. Consequently, the court shall deem admitted any properly-supported statement of fact in the Defendants' Local Rule Statement whose denial in Martin's Local Rule Statement is not supported by admissible evidence.

## II. FACTS

On May 14, 1984, Martin, who is black, began working for the Town as an equipment mechanic in the Equipment Division of the Public Works Department ("the Department"). At all times relevant to this case, Edwards was the Town's Director of Public Works. The Town promoted Martin to Master Mechanic on May 1, 1990. The job description for the Master Mechanic position reads, in part, as follows:

> This is not a supervisory position, but a position of lead mechanic in the Equipment Maintenance Division.

> This is skilled work in the maintenance and repair of all types of Public Works construction and maintenance equipment.

> The Master Mechanic must lead, instruct and assist the Equipment Mechanics in all phases of the work. He must be able to perform all the duties of the Equipment Mechanic. He must also assign work, write up job tickets, main-

tain records, fill out forms, confer with and make reports to supervisor; maintain work schedules and assist in the requisitioning of parts and supplies. . . .

Capable of the complete diagnosis, disassembly, overhaul, repair and reassembly of any mechanical, electrical or other break down or failure of a motor truck or piece of construction equipment. . . .

Physically capable of performing the job requirements. . . .

(Dkt.# 22, Ex. B.) At all times relevant to this case, Martin's employment was governed by a collective bargaining agreement between Martin's union and the Town.

The parties have extensively detailed Martin's employment with the Town and his various work-related injuries. Beginning on December 20, 1999, Martin has suffered various wrist, elbow, shoulder, and back injuries at work, requiring him to sometimes take weeks or months of leave, or be restricted in his work duties. In fact, from what the court can discern, between December 20, 1999 and May 2003, Martin either injured himself or aggravated an existing injury approximately six times, and he presented to at least three doctors, Dr. Anthony LaMarca, M.D. ("Dr. LaMarca"), Dr. Steward Gross, M.D. ("Dr. Gross"), and Dr. Nicholas Polifroni ("Dr. Polifroni"), M.D. The court notes, however, that much of this history occurred prior to the operative dates for this case. Indeed, prior to this case, Martin and the Town have been engaged in a number of lawsuits or administrative proceedings involving these facts.[2] Consequently, the court sees no need to detail those facts here.

The relevant time period in this case can be discovered from the complaint, in which the Plaintiff alleges that he injured himself in May 2003 and he was discriminated, harassed, and retaliated against since June 2003. On May 20, 2003, Martin presented to Dr. LaMarca, stating that he had re-injured his elbow. Dr. LaMarca then placed Martin out of work until June 2, 2003, at which time Martin was allowed to return to a light duty assignment.

The Defendants maintain that Martin received a light duty assignment. According to the Defendants, Martin was assigned light duty tasks consistent with the physical restrictions imposed by his doctors. Martin, on the other hand, claims that Edwards assigned Martin to clear or cut brushes in cold weather, which aggravated or exacerbated his injuries.

Martin continued this light duty assignment until September 16, 2003, at which time he complained to Dr. LaMarca of increased elbow pain radiating to his wrist, and of numbness in the fingers of his right hand. Dr. LaMarca placed Martin out of work until September 29, 2003, at which time he was restricted to light duty office work.

On October 30, 2003, Martin allegedly injured himself again while working a light duty assignment. That same day, Martin informed Dr. LaMarca that, while he was clearing brush from a road sign with a pair of clippers, he experienced increased pain in his right shoulder and elbow. Martin was again placed out of work. Also on that same day, Edwards received a copy of Martin's accident report as completed by Dr. LaMarca, who, effective November 3,

---

**2.** These proceedings began in 1999 and include two lawsuits in federal court alleging race and disability discrimination, harassment, and retaliation; a trial before the Workers' Compensation Committee, where Martin claimed retaliation for filing a workers' compensation claim; three filings with the Connecticut Commission on Human Rights and Opportunities; and a lawsuit in Connecticut Superior Court alleging retaliation for filing a workers' compensation claim.

2003, restricted Martin to light duty work limited to office work within the Department's garage. After reviewing Dr. La-Marca's October 30, 2003 report, Edwards wrote a letter to Martin that reads as follows:

In light of your ongoing medical condition as evidenced by your most recent accident report (10/30/03) and your evaluation by Dr. LaMarca, this department can not [sic] accommodate your requirement for a light duty assignment limited to office work within the garage. Over the past four years the Department of Public Works has provided you with 151 days of light duty assignment. Should the Department identify a suitable light duty assignment in the future, you will be contacted and directed to report to work. In the meantime, . . . you are herein instructed to complete job searches to continue to receive benefits.

You are hereby directed to comply with the requirement of the [collective bargaining agreement] in order to continue to receive compensation from the Town of Westport.

(Dkt.# 22, Ex. P.)

Martin continued to treat with his doctors throughout the 2003–2004 winter and spring for his lower back, right shoulder, and right upper extremity. In addition, on February 26, 2004, Martin began treating with Dr. Tedd Weisman, M.D. ("Dr. Weisman") for his right shoulder. On May 20, 2004, the Town received a progress note from Dr. Polifroni, who stated his belief at the time that Martin's injuries were permanent. (*See id.*, Ex. N.) In addition, Dr. LaMarca testified at his deposition that it was his belief at the time that Martin would never be able to return to full duty. (*See id.*, Ex. S.)

On May 26, 2004, Edwards formally requested that Diane Farrell ("Farrell"), First Selectwoman, begin the disability retirement process as outlined in the collective bargaining agreement by having the Personnel Department schedule three independent medical examinations ("IMEs"). Edwards sent a letter to Martin on June 15, 2004, which set forth the schedule for his IMEs. On July 7, 2004, Martin saw Dr. Kenneth Kramer, M.D. ("Dr. Kramer") for his first IME, an evaluation of his lower back. Dr. Kramer concluded that Martin's lower back injury was permanent, requiring permanent work restrictions. (*See id.*, Ex. V.) Also on July 7, 2004, Martin saw Dr. Eric M. Garver, M.D. ("Dr. Garver") for his second IME, an evaluation of his right shoulder and arm. Dr. Garver concluded that Martin was "disabled" with respect to his right upper extremity, and should be limited to "selected light duty." (*See id.*, Ex. W.) On July 13, 2004, Martin saw Dr. Gary D. Soloman, M.D. ("Dr. Soloman") for his third IME, an evaluation of his lower back, right shoulder, and right upper extremity. In his report, Dr. Soloman concluded as follows:

It is my opinion that Mr. Martin is not capable of performing full duty work as a mater mechanic without restrictions due to persistent injuries to his right shoulder and right upper extremity which include multiple tendinitis as well as ulnar and median nerve neuropathies. Specifically, Mr. Martin would have difficulty complying with the job requirements as indicated by the Department of Public Works, which include: "Capable of complete diagnosis, disassembly, overhaul, repair and reassembly of any mechanical, electrical, or other breakdown or failure of a motor, truck or piece of construction equipment."

Due to the chronicity of Mr. Martin's injuries, I believe that they are permanent in nature.

(*See id.*, Ex. X.)

Thereafter, the Town's Personnel Director scheduled a disability retirement

hearing for Martin to take place during the Pension Board Meeting on August 10, 2004. The terms of Martin's collective bargaining agreement provide for a Disability Pension Program, which is designed specifically for cases where the Pension Board has reason to believe that an employee who is being retired will never recover from a work-related injury. At the Pension Board Meeting, which Martin apparently did not attend, the Pension Board resolved that Martin was to retire effective September 1, 2004, with a monthly retirement benefit. Martin's pension payments did, in fact, commence on September 1, 2004.

The Town has an anti-harassment policy in place, which was posted in Martin's place of work and on which Martin received training. Martin admits that he has raised no evidence that he ever used the Town's internal complaint procedures to complain about harassment because of his race or physical disability. To support his claims here, Martin offers three specific examples of light duty assignments that he claims were given to him to harass him and exacerbate his injuries: (1) assigning him to clear and cut brush by the side of the road in extremely cold weather; (2) assigning him to cut brush with a pair of "loppers"; and (3) assigning him to put up street signs. Martin also claims that he was treated differently than four similarly situated white employees of the Town.

## III. DISCUSSION

Martin alleges that the Defendants discriminated, harassed, and retaliated against him in violation of CFEPA.[3] The Defendants argue that Martin's claims are barred by the doctrine of res judicata, that Martin's complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") was untimely, and that Martin's substantive allegations fail as a matter of law. The court shall discuss the parties' arguments seriatim.

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56.

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *Am. Int'l Group, Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975)).

A dispute concerning a material fact is genuine " 'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F.2d

---

**3.** In certain portions of his submissions, Martin states that the Defendants violated his rights under federal law. The court notes, however, that Martin's complaint is brought under Connecticut law only.

979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

## B. RES JUDICATA

■ Before the court analyzes any substantive claims at issue here, it must address the Defendants' argument that Martin's claims are barred by the doctrine of res judicata. The court begins by first determining whether to apply federal or Connecticut preclusion law. "When an Article III court is presented with controversies that have previously been resolved by state-court judgments, it is required by federal statute to accord such judgments 'the same full faith and credit ... as they have by law or usage in the courts of such State ... from which they are taken.'" *Town of Deerfield, N.Y. v. F.C.C.*, 992 F.2d 420, 428 (2d Cir.1993) (quoting 28 U.S.C. § 1738); *see Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80–81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). "'To accord full faith and credit to a given state-court judgment, the court must at least apply that state's principles of res judicata and collateral estoppel, ... that is, it must give a prior state-court judgment 'the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered,' *Migra* ..., 465 U.S. at 81, 104 S.Ct. 892....'" *Town of Deerfield, N.Y.*, 992 F.2d at 429 (internal citation omitted). The Defendants argue that a judgment from the Connecticut Superior Court precludes litigation of Martin. Consequently, Connecticut preclusion law applies.

The Connecticut Supreme Court recently has described res judicata as follows:

The doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.... If the same cause of action is again sued on, the judgment is a bar with respect to any claims relating to the cause of action which were actually made or which might have been made....

[W]hether to apply either doctrine in any particular case should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close ... and the competing interest of the plaintiff in the vindication of a just claim.... These [underlying] purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation.... The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate.... Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest.

*Powell v. Infinity Ins. Co.*, 282 Conn. 594, 600–02, 922 A.2d 1073 (2007) (internal citations and quotation marks omitted).

The Defendants argue that res judicata applies here because of a lawsuit filed in the Connecticut Superior Court, *Martin v. Town of Westport*, Docket No. FST–CV–05–4002886–S ("the State Action"). (*See* dkt. # 22, Ex. D.) In the State Action complaint, Martin alleged that he had sus-

tained a work-related back injury on March 18, 2002; he was treated by his doctors; he was placed on light duty from 2003 to August 2004; and that, on August 10, 2004, the Town forced him to retire, effective September 1, 2004. (*See id.*) Martin claimed that the Town had: (1) discriminated against him because of his work-related injury in violation of Conn. Gen.Stat. § 31–290a; (2) discriminated against him because he filed for workers' compensation benefits in violation of Conn. Gen.Stat. § 31–290a; and (3) intentionally and negligently inflicted emotional distress upon him. The Town then moved for summary judgment on all counts of the complaint in the State Action. The Honorable David R. Tobin subsequently issued a decision granting the Town's motion. *See Martin v. Town of Westport,* No. FSTCV054002886S, 2007 WL 241237 (Conn.Super.Ct. Jan.17, 2007).

The court agrees with the Defendants that res judicata bars the claims in this case. There is no dispute that this case involves the same parties, or their privies, as the State Action. The court is left, then, to determine whether Judge Tobin's decision was a "final judgment rendered upon the merits," and whether the claims asserted in the this action were, or could have been, raised in the prior action.

■ There is no question that Judge Tobin reached the merits of Martin's State Action allegations. Martin argues, however, that because he has appealed Judge Tobin's decision, and because the appeal has not been decided, that Judge Tobin's decision is not "final" for res judicata purposes. Martin's assertion is clearly wrong. "In Connecticut, ... the judgment of a trial court [is] final, despite a pending appeal, when the issue [is] ... the applicability of the rules of res judicata...." *Enfield Federal Sav. and Loan Ass'n v. Bissell,* 184 Conn. 569, 573, 440

A.2d 220 (1981) (internal citations and quotation marks omitted). "The fact that a prior judicial determination may be flawed ... is ordinarily insufficient, in and of itself, to overcome a claim that otherwise applicable principles of res judicata preclude it from being collaterally attacked.... If the judgment [in the prior action] is erroneous, the unsuccessful party's remedy is to have it set aside or reversed in the original proceedings...." *Carnemolla v. Walsh,* 75 Conn.App. 319, 327, 815 A.2d 1251 (2003) (internal quotation marks omitted). Thus, the fact that Martin has appealed Judge Tobin's decision is of no consequence here.

■ Next, Martin argues that res judicata does not apply here because race, color, and ethnic discrimination claims were not litigated in the State Action. This argument is also without merit. Connecticut uses "a transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata." *Comm'r of Envtl. Prot. v. Conn. Bldg. Wrecking Co., Inc.,* 227 Conn. 175, 189, 629 A.2d 1116 (1993). As the Connecticut Supreme Court has held,

[T]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the par-

ties' expectations or business understanding or usage . . . .

*Id.* at 189–90, 629 A.2d 1116 (internal quotation marks omitted). The only significant differences between the State Action and this case are the legal theories alleged. The transactional backgrounds of each case are essentially the same. Thus, it is clear that the "transactional test" used by Connecticut courts is satisfied here.

 Martin's strongest argument against the application of res judicata is that his CFEPA claims could not have been brought in the State Action because he was required to file a complaint with the CHRO and await the CHRO's decision. This argument, however, is unavailing. "[U]nder the doctrine of res judicata, or claim preclusion, a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim [or any claim based on the same operative facts that] *might have been made* . . . . [T]he appropriate inquiry with respect to [claim] preclusion is whether the party had an *adequate opportunity to litigate the matter in the earlier proceeding* . . . ." *Conn. Nat'l Bank v. Rytman,* 241 Conn. 24, 43–44, 694 A.2d 1246 (1997) (emphasis in original) (internal quotation marks omitted).

"The central issue is whether, with respect to the [ ] operative facts, [a plaintiff] had an adequate opportunity to litigate all of [his] claims [in the earlier proceeding] . . . ." *Id.* at 44, 694 A.2d 1246. To determine whether a plaintiff has had an adequate opportunity to litigate his claims in an earlier proceeding, the Connecticut Supreme Court uses the following test:

[W]hen the plaintiff brings an action on [a] claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with re-

spect to it, he may not maintain a second action in which he tenders the other theory or ground. If however, the court in the first action *would clearly not have had jurisdiction* to entertain the omitted theory or ground (or, having jurisdiction, *would clearly have declined to exercise it as a matter of discretion),* then a second action in a competent court presenting the omitted theory or ground should not be precluded.

*Id.* (emphasis in original) (internal quotation marks omitted).

The parties agree that Martin was bound to follow Conn. Gen.Stat. § 46a–82, whereby one must file a complaint with, and receive a release of jurisdiction from, the CHRO before bringing suit in court. *See Sullivan v. Board of Police Com'rs of City of Waterbury,* 196 Conn. 208, 215–16, 491 A.2d 1096 (1985). In addition, the court recognizes that, under Connecticut law, "[i]t is a settled principle . . . that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." *Simko v. Ervin,* 234 Conn. 498, 503, 661 A.2d 1018 (1995) (internal quotation marks omitted).

The above-quoted law, however, does not help Martin. Martin was not required to wait for the CHRO to release jurisdiction on its own, as Connecticut statute provides that

The complainant and the respondent, by themselves or their attorneys, may jointly request that the complainant receive a release from the commission at any time from the date of filing the complaint until the expiration of two hundred ten days from the date of filing of the complaint. The complainant, or his attorney, may request a release from the commission if his complaint with the commission is still pending after the ex-

piration of two hundred ten days from the date of its filing.

Conn. Gen.Stat. § 46a–101(b). Martin filed his CHRO complaint on October 26, 2004. Martin could have asked the Defendants to join him in seeking a release from the CHRO's jurisdiction at any from October 26, 2004 until the expiration of 210 days from October 26, 2004. Furthermore, after the expiration of 210 days from October 26, 2004, Martin could have unilaterally sought a release of the CHRO's jurisdiction. Either of these early release options was available to him. If Martin had obtained an early release, he could have: (1) amended his State Action complaint as a matter of right during the first thirty days after the return day; (2) amended his State Action complaint with the Defendants' consent; or (3) amended his State Action by leave of the Superior Court. *See* Connecticut Practice Book ("Practice Book") §§ 10–59, 10–60. Martin did not, however, seek an early release from the CHRO, which would have allowed him to amend his State Action complaint.

Martin waited for the CHRO to issue the release on its own on January 17, 2006. Despite the fact that Martin obtained the release on January 17, 2006, his argument still fails. There is no doubt that, after January 17, 2006, the Connecticut Superior Court clearly had jurisdiction over Martin's CFEPA claims. Furthermore, at that time, the State Action was still pending in the Connecticut Superior Court, and the summary judgement motion in that case had yet to be filed, let alone decided.[4] Martin thus still had the option to amend his complaint in the State Action to include his CFEPA claims. *See* Practice Book § 10–60. Considering that the background facts of the State Action and this case are essentially the same, and that both cases involve discrimination claims arising from Martin's employment, it would have been vastly preferable for Martin to simply amend the State Action complaint, which assuredly would have been allowed even if the Defendants had not provided their consent. *See Tedesco v. Julius C. Pagano, Inc.*, 182 Conn. 339, 341, 438 A.2d 95 (1980) (noting that, although "[t]he grant or denial of a motion to amend the pleadings is a matter within the discretion of the trial court[,] ... [i]n the interest of justice courts are liberal in permitting amendments; unless there is a sound reason, refusal to allow an amendment is an abuse of discretion").

Martin's argument that the Defendants removed this case to federal court instead of consolidating the cases is irrelevant. The Defendants were under no obligation to help Martin avoid any res judicata issues. Rather, it was Martin's responsibility, not the Defendants', to take the appropriate action by amending his State Action complaint. Martin instead made the tactical decision to initiate a separate lawsuit. In doing so, he took the chance that a final decision would be reached in the State Action, thus implicating res judicata in this case. This was his choice.

The State Action involved an adjudication on the merits. It also involved the same parties, or their privies, as this case. In addition, the claims asserted in this case could have been raised in the prior action. The court thus finds that the requirements for res judicata have been met, and Martin's claims here are barred. Consequently, the Defendants' motions for summary judgment (**dkt. # s 18 & 20**) are **GRANTED.**

---

4. Indeed, Judge Tobin's decision was issued on January 17, 2007, exactly a year after the CHRO issued its release.

## C. TIMELINESS

 Even if Martin's claims were not barred by res judicata, many of his claims are, at least in part, time-barred. A CHRO complaint "must be filed within one hundred and eighty days after the alleged act of discrimination...." Conn. Gen.Stat. § 46a–82(f). Martin's CHRO complaint was filed on October 26, 2004, meaning that the alleged acts of discrimination must have occurred on or after April 29, 2004. The only discreet act that occurred during this time was Martin's forced retirement. Martin does not provide specific dates as to when he was assigned to clear and cut brush by the side of the road in extremely cold weather, cut brush with a pair of "loppers," or put up street signs. Thus, they cannot be considered as discrete acts of discrimination or retaliation for the purposes of this motion. As a result, for the purposes of his CFEPA discrimination and retaliation claims, only the forced retirement may be considered. The court notes, however, that Martin's "harassment" claim can be construed as an "continuing violation"-type hostile work environment claim. For such a claim, Martin need only to have filed a charge within 180 days of any act that is part of the hostile work environment. *See Wilks v. Elizabeth Arden, Inc.,* 507 F.Supp.2d 179, 191 (D.Conn.2007).

## D. CFEPA RACE/COLOR/NATIONAL BACKGROUND DISCRIMINATION

Assuming that Martin's CFEPA discrimination claim were not barred by res judicata or time-barred, it would still fail. CFEPA provides that "[i]t shall be a discriminatory practice ... [f]or an employer ... to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the

individual's race, color, ... national origin, ancestry, ... or physical disability...." Conn. Gen.Stat. § 46a–60(a)(1). In the context of employment discrimination claims, the Connecticut Supreme Court looks to federal law for guidance in interpreting CFEPA, namely, it applies the familiar burden-shifting framework articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Jackson v. Water Pollution Control Auth. of City of Bridgeport,* 278 Conn. 692, 705, 900 A.2d 498 (2006). The Connecticut Supreme Court has summarized this framework as follows:

> Under this analysis, the employee must first make a prima facie case of discrimination. The employer may then rebut the prima facie case by stating a legitimate, nondiscriminatory justification for the employment decision in question. The employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision actually was motivated by illegal discriminatory bias.

*Id.* (internal quotation marks omitted).

"In order to establish a prima facie case, the complainant must prove that: (1) he [was] in the protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) that the adverse action occurred under circumstances giving rise to an inference of discrimination." *Id.* at 705–06, 900 A.2d 498. Martin was in the protected class, and he did suffer an adverse employment action. There are serious questions, however, as to whether Martin was qualified for his position during the relevant time period. More than one doctor considered Martin to be permanently injured, and more than one doctor believed that Martin should be restricted to light duty, which does not appear to be consistent with the

job description for a Master Mechanic. In addition, from what the court can discern in the record, it appears that every time Martin returned to work, even in situations where he was not on full duty, he either sustained more injuries or exacerbated existing injuries. Although the court sympathizes with Martin, and although the court is certain that Martin had the knowledge and physical capability to be a Master Mechanic when he first obtained that position, the facts of this case raise grave doubts as to whether Martin was physically capable to be a Master Mechanic during the relevant time period.

■ Even if the court were to assume that Martin were qualified for his position, he must show that the adverse action taken against him occurred under circumstances giving rise to an inference of discrimination. Frankly, the court sees no evidence of such circumstances. To establish this element of the prima facie case, Martin may show that he was treated differently from "similarly situated" co-workers. *See, e.g., Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 64 (2d Cir.1997) ("To establish the fourth element of a prima facie [Title VII sex discrimination] case, [the plaintiff] must show that she was treated differently from 'similarly situated' males.").

Martin argues that six white employees of the Town who sustained work-related injuries (John Gudzick, John Harada, Douglas Meyers, Paul Byron, Joe Battone, and Dale Wehmhoff) were treated differ-

ently than he, a black employee, was. Martin offers nothing to show that these men were similarly situated to him. "To be 'similarly situated,' the individuals with whom [a plaintiff] attempts to compare h[im]self must be similarly situated in all material respects." *Id.* Martin has not shown that these white employees were similarly situated to him in terms of their job functions. More importantly, however, Martin has submitted no evidence that any of these white employees sustained injuries similar to his; were injured for as great a length of time as he was; or required the same work accommodations as he did. Martin's affidavit is insufficient to raise a genuine issue of material fact in this regard. Martin himself is not qualified to swear to the extent or nature of those white employees' injuries. Rather, he must present some admissible evidence to make his case (i.e., deposition testimony or affidavits from those white employees). He has not done so here.[5]

Additionally, even if the court were to say that Martin had made his prima facie case, his claim still ultimately would fail. The Defendants have articulated a legitimate, non-discriminatory reason for their conduct, namely, that Martin's persistent physical injuries prevented him from continuing in his position. The burden then shifts back to Martin to demonstrate that the Defendants' proffered reason is merely pretext for wrongful discrimination. Martin has failed to do so here.

---

**5.** The court points out that Judge Tobin came to a similar conclusion. In the State Action, Judge Tobin stated the following:

[The plaintiff] states .... that he was not allowed to work while injured white co-workers Dale Wehmhoff, Douglas Meyers and Joe Battone were provided light duty assignments. He, however, fails to provide details as to his coworkers' duties, injuries, or restrictions.... It does not suffice for the

plaintiff to rely on mere assertions of fact that a genuine dispute of material fact exists. The plaintiff has the burden of demonstrating with evidence the existence of a genuine issue of material fact. Mere conclusory allegations and assertions will not suffice to defeat a motion for summary judgment in this area of law.
*Martin,* 2007 WL 241237, at *7 (internal quotation marks omitted).

Martin argues that "there is no question that [he] is capable of carrying [out] his job duties," and, because he was able to carry out his job duties and was capable and able, it is "undisputedly clear" that the Defendants' reason is pretext. This argument carries little weight. To begin with, as discussed above, Martin's physical capacity to fully perform his duties was greatly in doubt. Starting in 1999, Martin had an extensive history of work-related injuries that rendered him unable to be on full duty for lengthy periods of time. Some of the doctors who examined Martin ultimately concluded that his injuries were permanent, and that he would require restrictions on his duties. The evidence from Dr. Gross and Dr. Polifroni, to which Martin cites, does not change this. Indeed, in his August 9, 2004 letter, Dr. Polifroni explicitly stated that, although he believed Martin was capable of working, Martin would still need to be restricted in his work activities. (*See* dkt. # 25, Ex. 6.)

The main reason Martin's argument fails, though, is that there is no evidence that the discriminatory animus motivated any of the Defendants' conduct. Pretext is not demonstrated simply by showing that an adverse employment action occurred, and the fact that Martin is black is insufficient, absent any other evidence, to show pretext. *See, e.g., Farrar v. Town Of Stratford,* 537 F.Supp.2d 332, 346 (D.Conn.2008) ("The fact that [the plaintiff] is an African–American who did not receive the promotion is insufficient, by itself and without any evidence of racial animus, to demonstrate a Title VII violation. To hold otherwise would allow any person who is a member of a protected class under Title VII to prevail on a Title VII claim simply because he or she did not get a desired promotion."). Martin must show that the adverse action taken against him occurred because of his race, color, or national background. *See Oncale v. Sundowner Off-shore Servs., Inc.,* 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (holding that Title VII is directed only at discrimination based upon the categories protected by Title VII).

None of the Martin's submissions show that the adverse action taken against him occurred because of his race, color, or national background. There is a complete lack of evidence in this regard. Indeed, almost all of Martin's submissions relate exclusively to the nature and extent of his injuries (i.e., reports and deposition testimony from doctors), not to any discriminatory animus he faced at work. Given this dearth of evidence, the court fails to see how any rational finder of fact could find that the Defendants' conduct was motivated by wrongful discrimination. Consequently, even assuming that res judicata does not bar Martin's CFEPA discrimination claims, the Defendants' motions for summary judgment on those claims (**dkt. # s 18 & 20**) are nonetheless **GRANTED.**

### E. CFEPA RACE/COLOR/NATIONAL BACKGROUND HOSTILE WORK ENVIRONMENT

██ Martin's "harassment" allegation, which the court construes as a hostile work environment claim, also fails. As with CFEPA discrimination claims, Connecticut courts look to federal law for guidance when analyzing CFEPA hostile work environment claims. "To establish a claim of hostile work environment, 'the workplace [must be] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.... *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 ... (1993).... ' " *Brittell v. Dep't of Corr.,* 247 Conn. 148, 166–67, 717 A.2d 1254 (quoting *Oncale,* 523 U.S. at 78, 118 S.Ct.

998). " '[I]n order to be actionable ... a[n] ... objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so [W]hether an environment is sufficiently hostile or abusive [is determined] by looking at all the circumstances....' " *Id.* at 167, 717 A.2d 1254 (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

Martin's hostile work environment claim falls far short of the standard. As the court noted above, it can look to the entire continuum of allegedly hostile incidents so long as at least one of those incidents occurred within 180 days of the CHRO filing. Thus, in addition to the forced retirement, the court can consider the times when Martin was not assigned light duty, the assignment to clear and cut brush by the side of the road in extremely cold weather, the assignment to cut brush with a pair of "loppers," and the assignment to put up street signs. These incidents do not support a hostile work environment claim. Aside from conveying his personal perception that he was being slighted, Martin has not shown that his workplace was so "permeated with discriminatory intimidation, ridicule, and insult," nor is any one of the incidents described above so "extraordinarily severe," that the conditions of his employment were altered.

Moreover, even if Martin had shown such an objectively hostile working environment (which he has not), his hostile work environment claim fails for one of the same reasons his discrimination claim failed: he has provided no evidence that any of the Defendants' alleged harassment occurred because of his race, color, or national background. Thus, even assuming that there was harassment by the Defendants, Martin has not shown that such harassment occurred because of his race, color, or national background, which is a *sine qua non* for hostile work environment claims. *See Oncale*, 523 U.S. at 80, 118 S.Ct. 998. Consequently, even assuming that res judicata does not bar Martin's CFEPA hostile work environment claims, the Defendants' motions for summary judgment on those claims (**dkt. # s 18 & 20**) are nonetheless **GRANTED**.

## F. CFEPA DISABILITY DISCRIMINATION

In his complaint, Martin alleges that the Defendants violated CFEPA by discriminating against him because of his disabilities. The Defendants moved for summary judgment on all of Martin's claims, including his disability claims, which were fully analyzed in their memoranda of law. Martin, however, does not present any substantive legal arguments regarding these disability allegations. Instead, he focuses solely on the race/color/national background aspect of his CFEPA claims, and only provides a cursory mention that "there is evidence of disability discrimination because the defendant[s] ... pensioned off the plaintiff because of his ... impairment rating." (*See* dkt. # 25, p. 22.) According to Martin, he was denied a "reasonable accommodation." (*See id.*, p. 23.) This statement does not constitute proof of a claim, though. Additionally, the court fails to see how this statement could constitute a substantive argument supporting a disability claim, especially considering that, as seen from the facts above, Martin's collective bargaining agreement specifically provided for a disability retirement process. Because Martin presents no substantive legal arguments for his CFEPA disability claim, the court deems abandoned any such claim. *See Farrar*, 537 F.Supp.2d at 356.

Even if this claim were not abandoned, it would still fail as a matter of law. Based on the parties' submissions, the court considers Martin's disability claim to allege that he was denied a "reasonable accommodation."[6] The Defendants first argue that CFEPA does not provide such a cause of action. At the time the parties submitted their memoranda, the Connecticut Supreme Court had not expressly decided whether CFEPA provides a cause of action for "reasonable accommodation." In a very recent decision, however, the Connecticut Supreme Court has ruled on this issue and decided that there is such a cause of action under CFEPA. *See Curry v. Allan S. Goodman, Inc.*, 286 Conn. 390, 415, 944 A.2d 925 (2008).

As with other CFEPA claims, the Connecticut Supreme Court looks to federal law for guidance with CFEPA reasonable accommodation disability claims. *Id.* " 'In order to survive a motion for summary judgment on a reasonable accommodation claim, the plaintiff must produce enough evidence for a reasonable jury to find that (1) he is disabled within the meaning of the [statute], (2) he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [the defendant], despite knowing of [the plaintiff's] disability, did not reasonably accommodate it.' " *Id.* (quoting *Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 102 (1st Cir.2007)). "If the employee has made such a prima facie showing, the burden shifts to the employer to show that such an accommodation would impose an undue hardship on its business." *Id.*

Martin makes this analysis difficult because he has not briefed this issue. Assuming that Martin has shown he is disabled under CFEPA,[7] he has not demonstrated that he was able to perform the essential functions of the job with or without a reasonable accommodation. The evidence presented in this case sufficiently demonstrates that time and time again, Martin's injuries hindered his ability to perform his duties as a Master Mechanic. In addition, from what the court has read from the medical evidence submitted, it appears that Martin's injuries were permanent.

"In order to survive summary judgment on a reasonable accommodation claim, the plaintiff has the burden of showing that an accommodation would enable him to perform the functions of the job and that, at least on the face of things, it is feasible for the employer to provide the accommodation." *Id.* at 419, 944 A.2d 925 (internal quotation marks omitted). Unlike the situation in *Curry*, the court can discern only one "accommodation" for which Martin repeatedly asked, namely, "light duty." This appears to be the exclusive accommodation for which Martin asked. The court notes that Martin was, in fact, given light duty on various occasions. Nevertheless, Martin, as a Master Mechanic, was responsible for the maintenance and repair of all types of Public Works construction and maintenance equipment, which are physical tasks. One cannot seriously argue that the position of

---

6. Any other type of disability claim (i.e., discrimination or hostile work environment) would fail for the same reasons that the race/color/national background claims have failed, and the court need not provide a separate analysis repeating what it has already noted.

7. This would be an odd position for Martin to take, considering his persistent assertion that he unquestionably was capable of fully (not just "essentially") carrying out his job duties. This assertion causes the court to wonder why, then, he would need any special accommodations at all.

Master Mechanic position, in its entirety, could be considered "light duty." [8]

It also appears that Martin did not want some other position with the Department, but wished to continue as a Master Mechanic. In the court's view, Martin's repeated and consistent demands for "light duty" as a Master Mechanic "would eliminate ... the essential functions of the job he [had] and thereby create a permanent light duty position." *Id.* at 424, 944 A.2d 925. This would not be a reasonable accommodation, and would constitute an undue hardship upon the Defendants, especially considering that the Defendants have presented evidence that no permanent light duty positions exited in the Department. Consequently, even assuming that res judicata does not bar Martin's CFEPA reasonable accommodation disability claim, the Defendants' motions for summary judgment on that claim (**dkt. # s 18 & 20**) are nonetheless **GRANTED.**

## G. CFEPA RETALIATION

CFEPA prohibits retaliation against employees who exercise rights protected by the statute. Conn. Gen.Stat. § 46a–60(a)(4). Under federal law, employment retaliation claims are reviewed using the *McDonnell Douglas* burden-shifting framework, *see Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir.2003), and Connecticut courts look to federal law when interpreting CFEPA, *see Jackson*, 278 Conn. at 705, 900 A.2d 498. First, Martin must establish a prima facie case. Then, the Defendants must articulate a legitimate, non-discriminatory reason for their conduct. Finally, Martin must demonstrate that the Defendants' legitimate, non-discriminatory reason is pretext for wrongful discrimination.

■ " 'To establish a prima facie case of retaliation, an employee must show [1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action.' " *Hebrew Home and Hosp., Inc. v. Brewer*, 92 Conn.App. 762, 770, 886 A.2d 1248 (quoting *Terry*, 336 F.3d at 141). The court begins this analysis by noting that the only adverse employment action that may be considered here is Martin's forced retirement. *See supra* Part III.C. Martin must thus show that he participated in a protected activity and that a causal connection existed between his forced retirement and that activity.

Martin leaves it to the court to guess what protected activity allegedly caused his forced retirement. As he did with his disability claim, Martin provides essentially no analysis for his retaliation claim. The court points out that the filing of internal complaints of discrimination prohibited by CFEPA, or of a CHRO complaint, would constitute protected activities. *See Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 134 (2d Cir.1999) ("To establish ... participation in a protected activity ... [the plaintiff] need not prove that the conditions against which he protested actually amounted to a violation of Title VII.... Rather, [the plaintiff] must demonstrate only that he had a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.") (internal quotation marks and citations omitted); *Douglas v. City of Waterbury*, 494 F.Supp.2d 112, 123–24 (D.Conn.2007). Obviously, the filing of a lawsuit whereby

---

**8.** After all, oftentimes when Martin returned to work from an injury, his doctors restricted him to "light duties," implying either that

"light duties" were somehow different from his normal duties, or that "light duties" only constituted a part of his full duties.

one exercises rights protected by CFEPA would also constitute a protected activity. From what the court can discern, Martin filed three CHRO complaints [9] and three lawsuits before initiating this action, all of which would constitute protected activities.

 Martin's retaliation claim fails, however, because he cannot establish a causal connection between those protected activities and his forced retirement. "Of course, the causal connection between a protected activity and an adverse employment action may be established by direct evidence." *Wilks*, 507 F.Supp.2d at 196. Martin provides no such direct evidence. "In addition, however, '[t]he causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'" *Id.* (quoting *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 224 (2d Cir.2001)). "The Second Circuit 'has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action.'" *Id.* (quoting *Gorman–Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir.2001)). "In the Second Circuit and district courts within the Second Circuit, time periods greater than one year have been found, in general, to be insufficient to establish this temporal relationship." *Id.* (citing *Deravin v. Kerik*, No. 00 CV 7487(KMW)(KNF), 2007 WL 1029895, at *11 (S.D.N.Y. Apr. 02, 2007) (collecting cases)).

The first two CHRO complaints and the two prior federal lawsuits are too remote in time to establish the necessary temporal relationship to the adverse action here. Those CHRO complaints were the administrative prerequisites to (and hence filed before) the two federal lawsuits, which were filed on November 18, 1999 and August 12, 2002. The decision to retire Martin was made at the Pension Board Meeting on August 10, 2004, approximately two years after Martin filed the August 12, 2002 federal lawsuit. Martin thus cannot establish causation using any of these activities.

This then leaves the State Action and the third CHRO complaint. Neither of these can establish causation because they both occurred after the Pension Board Meeting. That is, the alleged retaliatory conduct had already occurred before the State Action and the third CHRO complaint (which was the administrative prerequisite to this action) were filed. Indeed, they could not have caused the retaliation, as Martin's forced retirement was a central issue in both the State Action and the CHRO complaint. As a result, Martin cannot establish a prima facie case for retaliation.

The court also points out that, even if Martin had established the prima facie elements for retaliation, the Defendants' legitimate, non-discriminatory reason remains, and Martin would still have to demonstrate pretext. Similar to his other claims, Martin has provided no evidence that the decision to force his retirement was in retaliation for his exercising his rights under CFEPA. Quite simply, there is nothing in the record indicating that the Defendants were motivated by retaliatory animus. Consequently, even assuming that res judicata does not bar Martin's CFEPA retaliation claim, the Defendants' motions for summary judgment on that

---

**9.** Martin submits no evidence with regard to the first two CHRO complaints, which the court assumes were the predicates for his earlier federal lawsuits.

claim (**dkt. # s 18 & 20**) are nonetheless **GRANTED.**

## IV. CONCLUSION

The court finds that all of Martin's claims in this case are barred by res judicata. In addition, the court finds that even if Martin's claims had not been barred by res judicata, they would fail as a matter of law. Thus, for the foregoing reasons, the Defendants' motions for summary judgment (**dkt. # s 18 & 20**) are **GRANTED.** The Defendants' joint motion to strike (**dkt.# 28**) is **DENIED as moot. Judgment in favor of the Town of Westport and Stephen J. Edwards shall enter on all claims in the complaint. The clerk shall close this file.**