Edward A. PERUTA and Harris
Agricultural Enterprises,
Inc., Plaintiffs,

v.

TOWN OF ROCKY HILL; Cheryl A.
Valadez; Leonard Kulas, Sergeant,
Rocky Hill Police Department, in his
official and individual capacities; Bri-
an Kelley, Officer, Rocky Hill Police
Department, in his individual capaci-
ty; and Edward S. Noble III, Defen-
dants.

No. 3:07CV01642 (DJS).

United States District Court,
D. Connecticut.

Aug. 7, 2009.

Rachel M. Baird, Law Offices of Rachel M. Baird, Torrington, CT, for Plaintiffs.

Rachel M. Baird, Law Offices of Rachel M. Baird, Torrington, CT, Scott M. Karsten, Karsten, Dorman & Tallberg LLC, West Hartford, CT, Peter T. Fay, Jarod F. Proto, Neubert, Pepe & Monteith, New Haven, CT, for Defendants.

Cheryl A. Valadez, Wethersfield, CT, pro se.

### MEMORANDUM OF DECISION AND ORDER

DOMINIC J. SQUATRITO, District Judge.

The plaintiffs, Edward A. Peruta ("Peruta") and Harris Agricultural Enterprises,

Inc. ("HAE") (collectively, "the Plaintiffs") bring this action for damages arising out of an arrest following an alleged motor vehicle theft. It is brought pursuant to the Fourth and Fourteenth Amendments, 42 U.S.C. § 1983, and the common law tenets of malicious prosecution and intentional infliction of emotional distress. The defendants, the Town of Rocky Hill ("Rocky Hill"), Sergeant Leonard Kulas ("Sergeant Kulas"), Officer Brian Kelley ("Officer Kelley") (collectively, "the Municipal Defendants"), and Edward S. Noble III ("Noble"),[1] have filed the within summary judgment motions, arguing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. For the reasons that hereafter follow, the motions for summary judgment (dkt. # s 32 & 34) are **GRANTED.**

## I. FACTS

On October 29, 2007, there was a barn fire on HAE's premises located in Wethersfield, Connecticut. Jeffrey B. Harris ("Harris"), the President and Director of HAE, suffered burns in the fire. He was then taken to Bridgeport Hospital and treated in the burn unit. On October 30, 2007, Harris executed a power of attorney ("the Power of Attorney") in favor of Peruta.

Harris is the legal owner of a condominium located at 29A Carillon Drive, Rocky Hill, Connecticut, where defendant Cheryl Valadez ("Valadez") was residing during the time period relevant to this case. The day Harris executed the Power of Attorney, Peruta informed the Rocky Hill Police Department ("the RHPD") of his intention, allegedly at the request of Harris, to dis-

---

1. One of the defendants, Cheryl A. Valadez, has not filed her own motion for summary judgment.

place Valadez from the condominium. That same day, Peruta, in the presence of two officers from the RHPD, told Valadez to vacate the premises within one hour. Valadez refused. Peruta then told Valadez to vacate the premises by the next day.

The next day, October 31, 2007, Peruta entered the condominium and began to bag Valadez's belongings. Members of the RHPD then informed Peruta, however, that they had been advised that he was not lawfully permitted to do this because Valadez could not be displaced except by a summary process action, and that if he persisted to remove Valadez's belongings, he might be arrested.

Also on October 31, 2007, Noble, who is an attorney, visited 29A Carillon Drive and invited Valadez and her neighbor, Sharon Hartstein ("Hartstein"), to give written statements as to what had gone on with regard to Peruta's attempts to displace Valadez. Additionally, he told Valadez that she could remain at the condominium. Furthermore, in response to Peruta's actions, Valadez, represented by Noble, filed a criminal lockout and trespass claim against Peruta and the RHPD.[2]

On November 1, 2007, both Valadez and Hartstein gave their written statements at Noble's office. In her statement, Hartstein asserted that on October 30, 2007, after learning about the barn fire on HAE's premises, she and Valadez went to the scene of the fire. Hartstein also asserted that during this visit, they heard of Peruta's assertions that he had been granted Power of Attorney by Harris. Hartstein further stated that Peruta was planning to have Valadez arrested if she did not vacate 29A Carillon Drive within two hours of his notification that she vacate the premises. Also on November 1,

2007, Valadez gave an oral statement to Detective Andrew O'Brien ("Detective O'Brien") of the RHPD regarding the criminal lockout and trespass similar to the statement she gave to Noble.

On November 2, 2007, Peruta removed from 29A Carillon Drive a 1996 Ford Truck registered to HAE and drove it to HAE's premises. At that time, Peruta had not contacted the RHPD regarding the removal of the vehicle, nor had he notified the RHPD of his Power of Attorney. According to Peruta, Harris, in addition to telling him to demand that Valadez vacate the condominium, told him that Valadez had no right of use, possession, or ownership of the truck. Peruta supports his contention with a statement Harris, while in Bridgeport Hospital's burn unit, gave to Detective O'Brien on November 5, 2007.

After Peruta removed the truck, Valadez called Noble to report the truck stolen. On behalf of his client, Noble called the RHPD to report that Peruta had stolen the 1996 Ford Truck. Noble also reported that, although the truck was likely registered to Harris, Peruta probably had the keys. Noble told the RHPD that Valadez could legitimately file the claim; however, there was no determination made at that time as to whether Valadez had standing to report an alleged theft of the vehicle in question.

Officer Kelley of the RHPD was dispatched to 29A Carillon Drive to investigate the alleged vehicle theft. After arriving at the condominium, Officer Kelley spoke with Noble and Valadez, who said that she had the right to use the truck and wanted to file a stolen vehicle report. Valadez was never asked about her or Peru-

---

**2.** After an investigation, the RHPD's Chief of Police informed Valadez by a letter dated November 12, 2007 that there was not suffi-cient evidence to support her criminal lockout and trespass claim.

ta's relationship to the owner of the truck or to the truck itself. Valadez then completed a stolen vehicle complaint form, which did not require her to list a suspect, and executed it under the penalty of false statement.

After receiving the stolen vehicle complaint, Officer Kelley called Peruta at home. Peruta asked if a sworn statement had been taken. According to Peruta, Officer Kelley said he had not taken one and did not need to do so. After speaking with Officer Kelley, Peruta voluntarily and immediately went to the RHPD. In his deposition testimony, Peruta admitted that he had expected to be arrested, and that he had gone to the RHPD with the purpose of having Valadez arrested for filing a false complaint, as Peruta believed that Valadez had no standing or authority to report the truck as stolen.

Peruta has known Sergeant Kulas of the RHPD for thirty years. Peruta thought that, based on his reputation and their relationship, Sergeant Kulas would know that Peruta was not lying. While Peruta, via the Power of Attorney, did have documentation to demonstrate his authority to take the truck, he admits that he intended to show it only if the RHPD would entertain a complaint against Valadez for false arrest.

At the RHPD, Peruta asked Officer Kelley and Sergeant Kulas if they were prepared to arrest Valadez. They responded that they were "unconcerned with that" because arresting Valadez was not their focus at the time. (Peruta Dep. at 152:2–6.) Peruta then asserted that he was authorized to use the truck on three grounds: (1) as a corporate officer of HAE; (2) by the Power of Attorney; and (3) by Harris's direct instructions. Officer Kelley and Sergeant Kulas did not check the internet for HAE's corporate information. Checking the internet for this information would have shown that Peruta was a corporate officer of HAE. Nonetheless, the results of such a search would not include any information demonstrating that he had authority to act on behalf of HAE with regard to using or moving the truck.

The police then asked Peruta to show the Power of Attorney in order to prove that he had the authority to remove the truck. Peruta has testified that he knew he would most likely be arrested if he did not provide it. Peruta, however, refused to show the Power of Attorney even after being shown Valadez's signed complaint. Peruta then asked the officers what would happen if he decided to remain silent at this point in the interrogation. The officers told him that he would be arrested. Peruta responded, "Okay, then let's end this right now . . . . you two officers can go fuck yourselves" (Peruta Dep. at 149:21–24), and chose to remain silent thereafter. Thus, Officer Kelley, per Sergeant Kulas's instructions, arrested Peruta for motor vehicle theft.

When the police began the process of booking Peruta, he at last offered to show the officers all of the documents he had with him, as he believed that the arrest could be undone. Peruta admits that did not know of Noble's involvement in this situation until after he had been arrested and was in the process of being booked. A day or so after his arrest, Peruta, when asked by a RHPD officer why he had been so quick to allow himself to be arrested, responded that it was the only way that he could get Valadez arrested for making a false complaint.

On November 5, 2007, Detective O'Brien interviewed Harris in the hospital regarding the criminal lockout and trespass in addition to the motor vehicle theft. On November 6, 2007 and November 7, 2007, Detective O'Brien tried to get in contact with Valadez through Noble's office. On

November 8, 2007, Noble and Valadez went to the RHPD to speak with Detective O'Brien. During this interview, Valadez stated that she had reported the truck stolen in her capacity as an HAE employee. In a statement given on November 9, 2007, however, Harris stated that Valadez was not and never has been employed by HAE. During his investigation into this incident, O'Brien was informed on November 12, 2007 that Noble no longer represented Valadez. On November 14, 2007, Valadez was arrested for falsely reporting a theft in violation of Conn. Gen.Stat. § 14–198. On November 16, 2007, the criminal case against Peruta for motor vehicle theft was dismissed.

## II. DISCUSSION

The Municipal Defendants and Noble now move for summary judgment on all the claims against them. The Plaintiffs maintain that neither the Municipal Defendants nor Noble are entitled to summary judgment. The Court shall discuss the parties' arguments seriatim.

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material

factual issue genuinely in dispute.'" *Am. Int'l Group, Inc. v. London Am. Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir. 1975)).

A dispute concerning a material fact is genuine " 'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

### B. UNREASONABLE SEIZURE/FALSE ARREST

The Fourth Amendment to the United States Constitution states that "[t]he right of the people to be secure in their persons, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. "The Fourth Amendment's search and seizure provisions are applicable to [state] defendants through the Fourteenth Amendment's Due Process Clause." *Tenenbaum v. Williams,* 193 F.3d 581, 602 n. 14 (2d Cir.1999) (citing *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)). The only allegation here is a Fourth Amendment false arrest claim under § 1983, *see Caldarola v. Calabrese,* 298 F.3d 156, 161 (2d Cir.2002) ("[a] § 1983 claim for false arrest derives from an individual's right to remain free from unreasonable seizures") and, conceivably, a false arrest claim under Connecticut law, *see Jocks v. Tavernier,*

316 F.3d 128, 134 (2d Cir.2003). There is no allegation that Officer Kelley and Sergeant Kulas, in carrying out Peruta's arrest, used excessive force.[3]

### 1. Officer Kelley and Sergeant Kulas

Officer Kelley and Sergeant Kulas argue that the Plaintiffs' unreasonable seizure/false arrest claims fail because probable cause existed to arrest Peruta. Specifically, they claim that they had been in possession of a sworn stolen vehicle report and oral reports that were corroborated by Peruta, who admitted that he had taken the vehicle. The Plaintiffs respond that Officer Kelley and Sergeant Kulas knew that neither Valadez nor Noble owned the truck, and that Officer Kelley and Sergeant Kulas never checked the website that would have proven that Peruta was a corporate officer of HAE. Additionally, the Plaintiffs argue that Peruta had the keys to the truck, which should have given credence to his claim that he had power to remove the automobile from 29A Carillon Drive.

██ "Claims for false arrest ... brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are substantially the same as claims for false arrest ... under state law." *Jocks*, 316 F.3d at 134 (internal quotation marks omitted); *see Pizarro v. Kasperzyk*, 596 F.Supp.2d 314, 316–19 (D.Conn.2009). To succeed on a false arrest claim under § 1983, a plaintiff must show that: "(1) the defendant intentionally arrested him or had him arrested, (2) the plaintiff was aware of the arrest, (3) there was no consent to the arrest, and (4) the arrest was not supported by probable cause." *Wein-*

*stock v. Wilk*, 296 F.Supp.2d 241, 246 (D.Conn.2003).

██ "There can be no federal civil rights claim for false arrest where the arresting officer had probable cause." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995). "[F]ederal and Connecticut law are identical in holding that probable cause to arrest exists when police officers have 'knowledge or reasonably trust-worthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed ... a crime.'" *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir.2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996)); *see State v. James*, 261 Conn. 395, 415, 802 A.2d 820 (2002). "While probable cause requires more than a mere suspicion of wrongdoing, ... its focus is on probabilities, not hard certainties...." *Walczyk*, 496 F.3d at 156 (internal citations and quotation marks omitted). "[P]robable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful." *Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir.1989). "The quantum of evidence required to establish probable cause to arrest need not reach the level of evidence necessary to support a conviction...." *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir.1983). Instead, "the probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir.2006); *see Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004).

---

**3.** The Court points out that even if an arrest is found to be unlawful, there is no rule that any force employed for that arrest is *per se* exces-

sive. *See Jones v. Parmley*, 465 F.3d 46, 62 (2d Cir.2006).

■ "A police officer may rely on the complaint of a third party to establish probable cause." *Craig v. Krzeminski,* 764 F.Supp. 248, 250 (D.Conn.1991). "[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir.2000) (internal quotation marks omitted); *see Curley v. Village of Suffern,* 268 F.3d 65, 70 (2d Cir.2001); *Stone v. Westport,* 411 F.Supp.2d 77, 86 (D.Conn.2006) ("It is well established that when information 'sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested' is received from a putative victim or eyewitness, probable cause exists absent circumstances that raise doubts as to the individual's veracity."). "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 128 (2d Cir.1997).

■ In the instant situation, Officer Kelley and Sergeant Kulas had received a complaint from a putative eyewitness victim. Additionally, as the Municipal Defendants point out, Peruta admitted to taking the truck, which actually served to corroborate the witness reports and make the case for probable cause even stronger. In the Court's view, these facts gave Officer Kelley and Sergeant Kulas reasonable basis for believing there was probable cause to arrest Peruta.

The Plaintiffs' arguments with regard to the fact that Officer Kelley and Sergeant Kulas never checked the website to see whether Peruta was a corporate officer of HAE, and with regard to the fact that Peruta had the keys to the truck, are not persuasive. As seen from the relevant case law, to make an arrest, there need not be evidence sufficient to ensure a conviction. In addition, Officer Kelley and Sergeant Kulas were not required to explore and eliminate every theoretically plausible claim of innocence before arresting Peruta.

Furthermore, there is no dispute that, during police questioning, Peruta chose not to show the Power of Attorney. He testified that, at some point prior to his arrest, it became his intention to be arrested so that he could then file a complaint against Valadez. He got his wish.[4] As a

4. The Court is not moved by Peruta's contention, as seen in his deposition testimony, that he simply was "exercis[ing] [his] right to remain silent." (Peruta Dep. at 190:21–22.) Peruta himself admits, to use his own words, that he "picked a time … [to] remain[] silent" with the intent to be arrested. (Id. at 190:24.) It is true that the Supreme Court has "consistently held that a refusal to cooperate [with police], without more, does not furnish the minimal level of objective justification needed for a detention or seizure." *Florida v. Bostick,* 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Here, however, there was more: at the time Peruta was asked to disclose the Power of Attorney, the police already had probable cause to arrest him based on the information they had. Indeed, the police were not questioning Peruta in an attempt to obtain a confession or some incriminating evidence, but rather in an attempt to obtain the exculpatory evidence that Peruta held in his own possession.

The Court also points out that, at the time Peruta was asked to disclose the Power of Attorney, he was not yet under arrest. Nonetheless, even if the Court were to find that Peruta had been in police "custody" at that time, his invocation of the "right to remain silent" bears little weight. Presumably, the "right to remain silent" to which Peruta refers is the right to remain silent described in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which itself flows from Fifth Amendment right providing that no person "shall be compelled in any criminal case to be a witness against himself," U.S. Const. amend. V. *See Dickerson v.*

result, the Court finds that there was probable cause to arrest Peruta. Therefore, his false arrest allegations fail as a matter of law. Consequently, with regard to Count I of the complaint, the Municipal Defendants' motion for summary judgment is granted.[5]

### 2. Municipal Liability

The Municipal Defendants next argue that Rocky Hill has no independent liability because the claim against the town is unsupported by evidence. Specifically, the Municipal Defendants argue the Plaintiffs have failed to produce any evidence that could support a failure to train claim. The Plaintiffs respond that the police officers violated Rocky Hill's policy intended to avoid false arrests.

"[A] municipality may not be found liable simply because one of its employees committed a tort . . . . [and] a municipality cannot be made liable under § 1983 for acts of its employees by application of the doctrine of *respondeat superior*." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir.2008) (internal citation and quotation marks omitted.) "In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) dam-

ages; and (5) that an official policy of the municipality caused the constitutional injury." *Id.* (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "The fifth element—the 'official policy' element—can only be satisfied where a plaintiff proves that a 'municipal policy of some nature caused a constitutional tort.'" *Id.* (quoting *Monell*, 436 U.S. at 691, 98 S.Ct. 2018). In addition, a plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

"[T]he inadequacy of police training may serve as the basis for section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388, 109 S.Ct. 1197. "*City of Canton* requires that plaintiffs establish not only that the officials' purported failure to train occurred under circumstances that could constitute deliberate indifference, but also that plaintiffs identify a specific deficiency in the city's training program and establish that th[e] deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129

---

*United States*, 530 U.S. 428, 432–35, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). "[T]his privilege not only extends to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant." *Ohio v. Reiner*, 532 U.S. 17, 20, 121 S.Ct. 1252, 149 L.Ed.2d 158 (2001) (internal quotation marks omitted). That being said, "the privilege's protection extends only to witnesses who have reasonable cause to apprehend danger from a direct answer." *Id.* at 21, 121 S.Ct. 1252 (internal quotation marks omitted). Peruta had no "reasonable cause to apprehend danger" with

regard to the police's questions about the Power of Attorney. He knew that the Power of Attorney would prove, if anything, that he could lawfully take the vehicle in question, and his invocation of the right to remain silent in this situation does not appear to have been done in good faith.

5. Because the Court has found that Officer Kelley and Sergeant Kulas Peruta did not violate Peruta's constitutional rights, it need not discuss qualified immunity. *See Eiden v. McCarthy*, 531 F.Supp.2d 333, 354 (D.Conn. 2008).

(2d Cir.2004) (quoting *City of Canton,* 489 U.S. at 391, 109 S.Ct. 1197). "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the [practice] is quite beside the point." *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (emphasis in original).

■ Here, the Court already has found that the Plaintiffs' false arrest claims fail as a matter of law. Thus, any municipal liability claim against Rocky Hill necessarily fails as well. Moreover, even if the Court were to find that Peruta had suffered a constitutional injury, the Plaintiffs' claim would still fail. The Plaintiffs have not investigated the training of Rocky Hill's police officers, nor have they produced evidence demonstrating an inadequacy in Rocky Hill's police training. Consequently, with regard to Count II of the complaint, the Municipal Defendants' motion for summary judgment is granted.[6]

## C. MALICIOUS PROSECUTION/IN-TENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The Plaintiffs also allege that Noble and Valadez violated Connecticut common law by committing malicious prosecution and intentional infliction of emotional distress. Noble moves for summary judgment on these claims, arguing that they fail as a matter of law.

### 1. Malicious Prosecution

Noble argues that the Plaintiffs cannot establish the elements necessary to prove malicious prosecution because he made a full and truthful disclosure to the RHPD based upon a reasonable belief that the information was correct at the time he made the disclosure. In addition, he argues that he did not pressure the RHPD to arrest Peruta or insist that the RHPD prosecute Peruta. The Plaintiffs respond that Noble has failed to take into account the knowledge he had at the time, and that Peruta would not have been arrested but for Noble's insistence. The Plaintiffs also state that Noble should have known that Valadez did not have standing to report an alleged theft of the truck. According to the Plaintiffs, Noble had motive to place Peruta and his reputation in "a negative situation."

■ Under Connecticut law, "[a]n action for malicious prosecution against a private person requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceed-

---

6. It is not clear to the Court whether the Plaintiffs, in either Count I or Count II, were alleging that the corporate plaintiff, HAE, suffered some sort of constitutional harm. The Court does not believe that they did, as the factual allegations contained in those counts are directed solely at the circumstances of Peruta's arrest, not any harm done to HAE. Nonetheless, the Municipal Defendants have provided an analysis with regard to HAE itself, arguing that it has suffered no distinct injury or loss and, as such, has no sustainable claims. According to the Municipal Defendants, no other official or employee of HAE was denied access to this vehicle, the corporation itself was not deprived of any property, and there was no claim that the Municipal Defendants seized the vehicle. The Plaintiffs provided no arguments or evidence countering the Municipal Defendants' arguments. "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Taylor v. City of New York,* 269 F.Supp.2d 68, 75 (E.D.N.Y.2003). Consequently, the Court deems all claims in Counts I and II, insofar as they concern HAE, to be abandoned. Additionally, based on the facts of this case and upon review of the Municipal Defendants' arguments, the Court believes that the claims in Counts I and II, insofar as they concern HAE, fail as a matter of law.

ings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *Bhatia v. Debek*, 287 Conn. 397, 404, 948 A.2d 1009 (2008) (internal quotation marks omitted). "The law governing malicious prosecution seeks to accommodate two competing and ultimately irreconcilable interests." *Id.* at 404–05, 948 A.2d 1009 (internal quotation marks omitted). "It acknowledges that a person wrongly charged with criminal conduct has an important stake in his bodily freedom and his reputation, but that the community as a whole has an even more important stake in encouraging private citizens to assist public officers in the enforcement of criminal law." *Id.* at 405, 948 A.2d 1009 (internal quotation marks omitted). "The policy of encouraging private citizens to assist in law enforcement is vindicated, in the law of malicious prosecution, by providing a limited immunity in the form of the first element that the plaintiff must prove to maintain his cause of action." *McHale v. W.B.S. Corp.*, 187 Conn. 444, 448, 446 A.2d 815 (1982).

 "A private person can be said to have initiated a criminal proceeding if he has insisted that the plaintiff should be prosecuted, that is, if he has brought pressure of any kind to bear upon the public officer's decision to commence the prosecution." *Id.* "[A] private person has not initiated a criminal proceeding if he has undertaken no more than to provide potentially incriminating information to a public officer." *Id.* "[I]f the defendant has made a full and truthful disclosure and has left the decision to prosecute entirely in the hands of the public officer, he cannot be held liable for malicious prosecution." *Id.*

 On the other hand, "a private citizen who knowingly provides false information to a public officer is not entitled to the limited immunity provided under the initiation element, even if that person brought no pressure to bear on the public officer and left the decision to prosecute entirely in the hands of that public officer." *Bhatia*, 287 Conn. at 407, 948 A.2d 1009. This is done "because false information necessarily interferes with the intelligent exercise of official discretion." *Id.* at 412, 948 A.2d 1009 (internal quotation marks omitted). "Not extending immunity from liability to such persons is consistent with the public policy underlying the immunity, to encourage private citizens to assist in law enforcement, a policy that is not furthered by immunizing from liability persons who knowingly provide false information." *Id.* at 407–08, 948 A.2d 1009 (emphasis in original).

 "[T]he existence of probable cause is an absolute protection against an action for malicious prosecution, and what facts, and whether particular facts, constitute probable cause is always a question of law." *Falls Church Group, Ltd. v. Tyler, Cooper and Alcorn, LLP.*, 281 Conn. 84, 94, 912 A.2d 1019 (2007) (internal quotation marks omitted). "Probable cause is the knowledge of facts sufficient to justify a reasonable person in the belief that there are reasonable grounds for prosecuting an action." *Id.* "Mere conjecture or suspicion is insufficient." *Zenik v. O'Brien*, 137 Conn. 592, 597, 79 A.2d 769 (1951). "Moreover, belief alone, no matter how sincere it may be, is not enough, since it must be based on circumstances which make it reasonable." *Id.* "Although want of probable cause is negative in character, the burden is upon the plaintiff to prove affirmatively, by circumstances or otherwise, that the defendant had no reasonable ground for instituting the criminal pro-

ceeding." *Bhatia,* 287 Conn. at 410–11, 948 A.2d 1009 (internal quotation marks omitted). "Malice may be inferred from lack of probable cause." *Falls Church Group, Ltd.,* 281 Conn. at 94, 912 A.2d 1019.

■ In the present case, the Plaintiffs' malicious prosecution claim against Noble fails as a matter of law. There is no evidence showing that Noble did not give what he reasonably believed to be truthful information, nor is there evidence that he placed any pressure on the RHPD to arrest Peruta. The Plaintiffs make much of the fact that when Noble called the RHPD to report the alleged vehicle theft, he told the dispatcher that he was "furious." No reasonable finder of fact would consider this to be evidence that Noble pressured the RHPD to arrest Peruta. Indeed, the facts of this case reveal that the police, despite Noble's call to the dispatcher and the stolen vehicle reports in their possession, were not anxious to arrest Peruta. They arrested Peruta only after he refused to provide exculpatory information, not because of some kind of pressure or direction by Noble.

The Court is also not persuaded by any argument that Noble, because he was involved in the circumstances surrounding Peruta's attempts to displace Valadez from the condominium, knew that Peruta had a Power of Attorney giving him the authority to take the vehicle in question. There is no evidence that Noble ever saw or read the Power of Attorney. Thus, even if Noble had heard about a Power of Attorney, one cannot assume that he, without actually seeing such a Power of Attorney, knew for a fact that it existed.

In addition, powers of attorney can be very limited or very broad in scope. There is no evidence that, during the relevant time period, Noble ever read the Power of Attorney or knew what provisions were specified within it. Thus, even if Noble, without reading the Power of Attorney, could somehow know for a fact that it granted to Peruta control over a particular piece of property or asset (i.e., the condominium), one cannot assume he also knew that the Power of Attorney granted control over other pieces of property or assets (i.e., HAE).[7] Put plainly, there is no evidence that Noble had specific knowledge of the Power of Attorney's provisions, yet, despite this knowledge, gave false information to the police. Because no reasonable finder of fact could find that Noble pressured the RHPD to arrest or prosecute Peruta, and because the Plaintiffs have failed to demonstrate that Noble acted without probable cause or with malice, the malicious prosecution claim against him fails. Consequently, with regard to Count III, Noble's motion for summary judgment is granted.

### 2. Intentional Infliction of Emotional Distress

■ Noble also argues that the Plaintiffs cannot, as a matter of law, establish the necessary elements for an intentional infliction of emotional distress claim. To succeed on claim of intentional infliction of emotional distress, "[i]t must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the

---

7. In fact, from the transcript of Noble's call to police dispatcher, it appears that Noble thought the truck was registered to Harris personally, not to HAE. So, even if Noble somehow knew that the Power of Attorney gave control over HAE to Peruta, Noble would not necessarily think that Peruta's authority extended to Harris's personal, non-corporate property.

cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . ." *Carrol v. Allstate Insurance Company,* 262 Conn. 433, 442–43, 815 A.2d 119 (2003) (internal footnote, citation, and quotation marks omitted). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Appleton v. Bd. of Educ. of the Town of Stonington,* 254 Conn. 205, 210–11, 757 A.2d 1059 (2000) (internal quotation marks omitted). "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Id.* at 211, 757 A.2d 1059 (internal quotation marks omitted). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." *Id.* at 210, 757 A.2d 1059. "Only where reasonable minds disagree does it become an issue for the jury." *Id.*

▮ The Plaintiffs' claim fails as a matter of law because no reasonable jury could find that Noble's behavior and actions were atrocious and utterly intolerable. There is no evidence that Noble did anything other than act in a way that, at the time, he believed to be in the best interests of his client, Valadez. That is to say, Noble was acting as a lawyer. Although the general public might not view lawyers entirely with favor, the Court does not believe that society has reached the point where it considers the practice of law to be "so outrageous" or "so extreme" that it is "beyond all possible bounds of decency," "atrocious," and "utterly intolerable in a civilized community." [8]

In short, because the Court agrees with Noble that his conduct did not rise to the level of extreme and outrageous behavior, the Plaintiffs' intentional infliction of emotional distress claim against him fails. Consequently, with regard to Count IV, Noble's motion for summary judgment is granted.[9]

### 3. Valadez

Although the Court has granted the motions for summary judgment, the claims against Valadez remain at issue because she herself never moved for summary judgment. The Court notes that Valadez is a *pro se* defendant, and she never had an attorney enter an appearance on her behalf in this case.

The claims against Valadez are brought under Connecticut common law only. When all of a plaintiff's federal claims have been dismissed, the Court can decline to exercise supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(c) if it determines that exercising supplemental jurisdiction would not promote economy, convenience, fairness, and comity. *See Itar–Tass Russian News Agency v. Russian Kurier, Inc.,* 140 F.3d 442, 446 (2d Cir.1998). "Certainly, if the

---

8. In addition, it is worth noting that Peruta admitted to not even knowing of Noble's involvement in this situation until after he was arrested and in the process of being booked.

9. As it did with HAE's claims against the Municipal Defendants, the Court deems abandoned HAE's claims against Noble alleging malicious prosecution and intentional infliction of emotional distress. Furthermore, even if these claims were not abandoned, the Court finds them to be without merit.

federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Castellano v. Bd. Of Trs. Of the Police Officers' Variable Supplements Fund,* 937 F.2d 752, 758 (2d Cir. 1991) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). "If it appears that the federal claims . . . could be disposed of on a motion for summary judgment under F.R.Civ.P. 56, the court should refrain from exercising pendent jurisdiction absent exceptional circumstances." *Kavit v. A.L. Stamm & Co.,* 491 F.2d 1176, 1180 (2d Cir.1974).

This Court declines to exercise supplemental jurisdiction over the state law claims against Valadez. For the purposes of economy and fairness, the Court addressed the state law claims against Noble, which were fully analyzed in the summary judgment memoranda. With regard to Valadez, however, the Court is left with two unanalyzed state law claims whose merit is uncertain. The Plaintiffs' allegations against the Municipal Defendants, which were the only jurisdictional bases for bringing this case in federal court, were not strong. Nevertheless, the Plaintiffs took the chance of filing a federal lawsuit for what is essentially a dispute under state law between Peruta and Valadez, who seemingly have an antagonistic relationship, the root cause of which is unknown to the undersigned. The Court, having disposed of the federal claims, shall not exercise jurisdiction over the remaining state law claims. If the Plaintiffs are so inclined, they can bring these claims against Valadez in state court. For the purposes of this case, they are hereby dismissed.

### III. CONCLUSION

Based on the foregoing, the motions for summary judgment (**dkt. # s 32 and 34**) are **GRANTED.** Judgment in favor of the Town of Rocky Hill, Sergeant Leonard Kulas, Officer Brian Kelley, and Edward S. Noble III shall enter on all claims against them in the complaint. The Plaintiffs' remaining state law claims against Cheryl Valadez are DISMISSED without prejudice to the Plaintiffs bringing those claims in state court.

**The clerk shall close this file.**