Paul C. FERRARESSO, Plaintiff,

v.

TOWN OF GRANBY, Chief David L. Watkins, Sergeant Doreen Mikan, and Officer Jameson Ball, Defendants.

No. 3:07CV00466(DJS).

United States District Court, D. Connecticut.

Aug. 21, 2009.

A. Paul Spinella, Law Offices of A. Paul Spinella & Associates, Hartford, CT, for Plaintiff.

Kerry L. Keeney–Curtin, Scott M. Karsten, Karsten, Dorman & Tallberg LLC, West Hartford, CT, for Defendants.

### MEMORANDUM OF DECISION AND ORDER

DOMINIC J. SQUATRITO, District Judge.

This is an action by Paul C. Ferraresso ("Ferraresso") for compensatory and punitive damages, attorney fees, and costs, against the Town of Granby ("the Town"), the Chief of the Granby Police Department David L. Watkins ("Chief Watkins"), Sergeant Doreen Mikan ("Sergeant Mikan") and Officer Jameson Ball ("Officer Ball") (collectively, "the Defendants"), arising out of Ferraresso's arrest on July 8, 2006. It is brought pursuant to 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, Article One §§ 7 and 9 of the Connecticut Constitution, and Connecticut statutory and common law.

Ferraresso alleges that Sergeant Mikan and Officer Ball violated his right under the Fourth Amendment to the United States Constitution to be free from false arrest and excessive force (Counts One and Two), and that the Town and Chief Watkins had in effect *de facto* policies, practices, and customs causing the Fourth Amendment violations (Count Three). Ferraresso also alleges the following state law claims: violation of Article I §§ 7 and 9 of the Connecticut Constitution (Count Four); reckless and negligent conduct (Count Five); assault and battery (Count Six); negligent infliction of emotional distress (Count Seven); intentional infliction of emotional distress (Count Eight); liability under Conn. Gen.Stat. § 52–557n (Count Nine); indemnification under Conn. Gen.Stat. § 7–465 (Count Ten); and false imprisonment (Count Eleven). The Defendants have filed the within motion for summary judgment on all eleven counts. For the reasons that hereafter follow, the motion for summary judgment (**dkt. # 31**) is **GRANTED.**

### I. THE PARTIES' SUBMISSIONS

#### A. MOTION TO STRIKE

Before addressing the background facts of this case, the Court must first address the Defendants' motion to strike. The Defendants seek to strike both portions of Ferraresso's affidavit and his "Special Damages List," which were submitted

along with his summary judgment opposition papers.

The Federal Rules of Civil Procedure do not explicitly allow motions to strike in the context of summary judgment. Rule 12(f) states that the Court may, upon a motion or its own initiative, "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Ferraresso's affidavit and "Special Damages List" do not qualify as "pleadings" under the Federal Rules. *See* Fed.R.Civ.P. 7(a). In addition, Rule 56, which governs summary judgment, does not provide a "motion to strike" as a tool in the summary judgment process. *See* Fed.R.Civ.P. 56.

The undersigned has expressed his disapproval of filing motions to strike during the summary judgment process, noting that "in the context of summary judgment, motions to strike are unnecessary and produce only redundant statements by the court that it has not relied on such inadmissible evidence in deciding the summary judgment motion." *Martin v. Town of Westport,* 558 F.Supp.2d 228, 231 (D.Conn.2008) (internal quotation marks omitted). "[T]he court knows the difference between admissible and non-admissible evidence, and would not base a summary judgment decision simply upon the self-serving *ipse dixit* of a particular party." *Id.* "If a party wishes to argue that an asserted material fact is not supported by the evidence, that party may do so in its summary judgment briefing." *Id.* (internal quotation marks omitted).

Because the Court may consider only admissible evidence in ruling on summary judgment, it sees no need to "strike" any portions of Ferraresso's submissions. "Local Rule 56(a) requires a court to consider only those statements of fact that are supported by the evidence." *Id.* Conse-

quently, the Defendants' motion to strike is denied.

## B. FERRARESSO'S AFFIDAVIT

Although it has denied the motion to strike, the Court notes that the Defendants have pointed out alleged deficiencies in the materials submitted by Ferraresso. The Defendants maintain that certain passages in Ferraresso's affidavit contradict his deposition testimony, are unsupported by his personal knowledge, or are otherwise inadmissible. Specifically, the Defendants allege that Paragraphs 6 and 12 of Ferraresso's affidavit are deficient.

Rule 56(e)(1) of the Federal Rules of Civil Procedure provides that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed.R.Civ.P. 56(e)(1). The Second Circuit "follow[s] the rule that 'a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.'" *Raskin v. Wyatt Co.,* 125 F.3d 55, 63 (2d Cir.1997) (quoting *Hayes v. New York City Dep't of Corr.,* 84 F.3d 614, 619 (2d Cir. 1996)); *see Mack v. United States,* 814 F.2d 120, 124 (2d Cir.1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969). Thus, factual issues created

solely by an affidavit crafted to oppose a summary judgment motion are not genuine issues for trial. *Id.*

■ The Court agrees that Paragraph 6 of Ferraresso's affidavit is inconsistent with the evidence, and is either unsupported in the record or contradicts his deposition testimony. In Paragraph 6, Ferraresso states, "Both Officer Ball and Sergeant Mikan ignored my pleas and the excessively tight handcuff was not loosened." During his deposition, however, when directly asked whether he had told the officers about the left handcuff being too tight, Ferraresso testified as follows:

A. I told [Sergeant Mikan] that some of her officers should not be—some of the officers in the Granby Police Department should not be police officers. I know she knew what happened back at that truck. She was that far away and I know she heard me, and she just kept on walking. I didn't think there would be any point in that.

Q. You know she heard you say what?

A. "Why are you doing that?" You know, "Why are you doing that to me?"

(Ferraresso Dep. at 71:14–22.)

Ferraresso did not testify that he informed Officer Ball or Sergeant Mikan that his left handcuff was too tight or that he pleaded with them to loosen or remove the left handcuff. Additionally, Ferraresso admitted that he did not complain of any injuries any time during the incident. Indeed, Ferraresso stated that he did not see "any point" in saying anything to Sergeant Mikan about the left handcuff being too tight. The Court finds that Paragraph 6 of Ferraresso's affidavit contradicts, or at least is unsupported by, Ferraresso's deposition testimony. Consequently, the Court shall disregard Paragraph 6 of the affidavit.

■ The Court disagrees, however, that Paragraph 12 of Ferraresso's affidavit is inconsistent with the evidence to which it cites, and is either unsupported in the record or contradicts deposition testimony. In Paragraph 12, Ferraresso states, "As a result of the above mistreatment I suffered serious injuries to my left shoulder, which required medical care, including surgery, as well as serious injuries to my left wrist, which also required medical treatment." Ferraresso has submitted evidence that he sustained injuries to his shoulder; in particular, Exhibit A of his supplemental response contains medical records from Dr. Steven McCoy, who noted that Ferraresso "was arrested and handcuffed with his arm twisted behind him. This caused pain, which has been continuing and worsening." Therefore, the Court shall consider Paragraph 12 for the purposes of this decision.

## C. SPECIAL DAMAGES LIST

The Defendants also point to Ferraresso's "Special Damages List" as an improper submission. As can be seen in the analysis below, however, the Court's decision does not use or depend on the "Special Damages List" submitted by Ferraresso. Because the Court did not rely upon the "Special Damages List" in rendering this decision, the Court finds it unnecessary to make any determination on this submission.

## II. FACTS

A number of the circumstances surrounding Ferraresso's arrest are hotly contested. Taking the evidence in the light most favorable to Ferraresso, the facts are as follows. On July 8, 2006, at approximately 5:30 p.m., Ferraresso, while operating his vehicle, drove to the side of the road in the area of 50 Cooley Road in Granby, Connecticut. Ferraresso con-

tends that, as he was driving down Cooley Road, he began to feel tired and dizzy, so he pulled over to the side of the road for a few minutes. He hit a tree stump when he drove off the road, and admits that he snapped his head violently, hurt his neck, and banged into the doorpost. Ferraresso alleges that, after driving off the road, the next thing he knew, he woke up in a field, approximately seventy or eighty feet from the edge of the road, feeling dizzy, sweaty, and thirsty.

The Granby Police Department dispatcher reported that a witness had observed Ferraresso's motor vehicle driving erratically before veering off the road. Sergeant Mikan and Officer Ball of the Granby Police Department were on patrol in separate vehicles at the time, and they were dispatched to the location of Ferraresso's motor vehicle. Officer Ball arrived at the scene first and saw Ferraresso's truck located approximately fifty feet off the road in a field. There was significant damage to the right side of the truck. Officer Ball observed Ferraresso, who was then sitting in the driver seat, attempting to drive, but succeeding only in spinning the wheels of the truck. After arriving at the scene, Officer Ball approached Ferraresso's vehicle and asked him to turn off the engine. After Ferraresso turned off his vehicle, Officer Ball asked him whether he was injured and whether he needed an ambulance. Ferraresso replied that he did not need an ambulance. He further stated to Officer Ball that he was traveling from Southwick, Massachusetts to his home in Barkhamstead, Connecticut, and that he had fallen asleep at the wheel. Ferraresso alleges that, during their discussion, Officer Ball acted in an intimidating matter by warning Ferraresso that he (Officer Ball) is a black belt in karate and saying, "Don't mess with me. You better do what I tell you. Don't fool with me. I'm a tough guy." Ferraresso claims that, for his part, at no time during the course of the stop or arrest did he physically threaten the police or resist arrest.

As Officer Ball was speaking with Ferraresso, Sergeant Mikan arrived at the scene. According to Sergeant Mikan, she approached Ferraresso's vehicle and found him to be argumentative and unwilling to answer Officer Ball's questions. Ferraresso denies this and states that he was cooperative with Sergeant Mikan and Officer Ball throughout the course of the stop and arrest. Sergeant Mikan attempted to ask Ferraresso such questions as "What happened?", "Are you okay?" and "Where are you going?" Sergeant Mikan asserts that Ferraresso replied with nonresponsive and irrelevant answers, such as that he was an offshore fisherman, that he was a black belt in karate, and that he could take both officers' guns before they could do anything about it. Ferraresso contends that he never claimed to be a black belt in karate and never threatened to take the officers' guns.

Sergeant Mikan claims that she smelled the odor of alcohol coming from Ferraresso and found him to be unsteady on his feet. Ferraresso concedes that he was unsteady, but attributed it to having been on a fishing boat recently, and to the fact that, at the time, he walked with a limp due to a torn ACL in his left knee and arthritis in his left hip joint. Sergeant Mikan then attempted to administer a field sobriety test on Ferraresso, but he refused to take the test. Sergeant Mikan thus came to the conclusion that Ferraresso was under the influence of alcohol and/or drugs, and informed Ferraresso that he was under arrest.

The officers then handcuffed Ferraresso. Sergeant Mikan placed the right handcuff on Ferraresso. Ferraresso's left arm was held by Officer Ball, who, according to Ferraresso, pulled, bent, and twisted it to such an extent that he caused

Ferraresso extreme pain in his left shoulder and wrist. According to Ferraresso, Officer Ball used a martial arts move in grabbing and twisting Ferraresso's arm by using his thumb as a fulcrum. Ferraresso admits, however, that Officer Ball lifted up his left arm only as far as the chain between the left and right handcuffs would allow. Ferraresso also maintains that Officer Ball placed the left handcuff on him too tightly, causing pain and injury.

After Ferraresso was handcuffed, Officer Ball conducted a brief search of Ferraresso's person to determine whether he was concealing anything dangerous. After this search, Ferraresso was led to Sergeant Mikan's cruiser and placed inside. Sergeant Mikan then conducted a search of Ferraresso's vehicle. During the course of the search, Sergeant Mikan located prescription drugs, which Ferraresso indicated had been prescribed to him for some medical issues.

Thereafter, Ferraresso was transported to the Granby Police Department with the allegedly tight left handcuff still in place, which Ferraresso claims caused him great pain, suffering and discomfort. Ferraresso alleges that Sergeant Mikan was aware of the excessive force administered upon him by Officer Ball but was indifferent to it, and at no time did Sergeant Mikan attempt to alleviate his pain by loosening the left handcuff. Once at the Granby Police Department, Ferraresso was placed in a holding cell with the allegedly tight handcuff still in place. Sergeant Mikan offered a Breathalyzer test to Ferraresso, which he refused to take.

Officer Ball and Sergeant Mikan claim that Ferraresso did not tell them at any time that his left handcuff was too tight, nor did he ask for it to be loosened or removed. Officer Ball and Sergeant Mikan further claim that Ferraresso did not complain of any injuries or request any medical attention during the incident. At some point during this incident, the police removed the handcuffs. Ferraresso wore the allegedly tight left handcuff for approximately twenty minutes.

Ferraresso was charged with Operating Under the Influence in violation of Conn. Gen.Stat. § 14–227a; Refusal to Submit to Test in violation of Connecticut General Statutes § 14–236; and Failure to Drive in Proper Lane in violation of Connecticut General Statutes § 14–236. On April 11, 2007, Ferraresso pled guilty to Operating Under the Influence, and the prosecution entered *nolle prosequi* on the other criminal charges. He was sentenced to two years incarceration, suspended after 120 days; lost the use of his driver's license for three years; was placed on three years of supervised probation; and ordered to pay a fine.

Ferraresso alleges that as a result of his arrest, his left rotator cuff was torn in three places and he suffered serious injuries to his left wrist. He did not, however, seek any medical attention for his left shoulder until more than two months after the incident. Ferraresso also claims that this incident: (1) caused him emotional damage in that he no longer trusts police officers; (2) caused interruptions in his sleep, for which he is currently medicated; and (3) caused him to suffer emotional distress due to the fact that he is now a convicted felon.

## III. DISCUSSION

The Defendants move for summary judgment on all the claims against them, arguing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. Ferraresso, in response, argues that the Defendants are not entitled to summary judgment on some of the claims. The Court shall discuss the parties' arguments seriatim.

## A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *Am. Int'l Group, Inc. v. London Am. Int'l Corp. Ltd.*, 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975)).

A dispute concerning a material fact is genuine " 'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

## B. ABANDONED CLAIMS

▮▮▮▮ The Defendants contend that Ferraresso has abandoned all his claims except for the excessive force and municipal liability claims brought pursuant to federal law. Upon review of Ferraresso's summary judgment submissions, the Court agrees. Ferraresso's opposition memorandum address only his excessive force and municipal liability under federal law. "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Coltin v. Corp. for Justice Mgmt., Inc.*, 542 F.Supp.2d 197, 206 (D.Conn.2008) (internal quotation marks omitted); *see Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.... Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed to be abandoned.") (internal citation omitted). The Court thus deems abandoned Ferraresso's false arrest claim under federal law (Count One) and all of his state law claims (Counts Four through Eleven).

## C. FOURTH AMENDMENT

Ferraresso alleges that Officer Ball violated his Fourth Amendment right to be free from unreasonable seizures by using excessive force against him during the course of his arrest. Specifically, Ferraresso claims that Officer Ball's use of force in twisting his arm and applying the left handcuff too tightly was unreasonable under the circumstances. Additionally, Ferraresso claims that Sergeant Mikan is liable for Officer Ball's use of excessive force because she failed to intervene to stop his use of unreasonable force, and that the Town and Chief Watkins are liable for Officer Ball's and Sergeant Mikan's conduct. The Defendants respond that Ferraresso cannot sustain his claim of excessive force because Sergeant Mikan and Officer Ball acted reasonably during

306

Ferraresso's arrest. Specifically, the Defendants argue that, even construing the evidence in the light most favorable to Ferraresso, the officers' use of handcuffs was not unreasonable and did not violate his constitutional rights.

██ The Fourth Amendment to the United States Constitution states that "[t]he right of the people to be secure in their persons, against unreasonable searches and seizures, shall not be violated." U.S. Cons. amend. IV. "The Fourth Amendment's search and seizure provisions are applicable to [state] defendants through the Fourteenth Amendment's Due Process Clause." *Tenenbaum v. Williams*, 193 F.3d 581, 602 n. 14 (2d Cir.1999) (citing *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)).

██ The United States Supreme Court has held that "*all* claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop or other 'seizure' of a free citizen should be analyzed under Fourth Amendment and its 'reasonableness' standard...." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (emphasis in original). Under *Graham*, "the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. 1865.

██ Furthermore, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396, 109 S.Ct. 1865 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 396–97, 109 S.Ct. 1865. While reasonableness is traditionally a question of fact for the jury, "defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of forces was objectively reasonable under the circumstances." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir.1994). In addition, to prevail on an excessive force claim, a plaintiff must show not only that the amount of force used was objectively unreasonable, but that he suffered some compensable injury as a result. *See Graham*, 490 U.S. at 396, 109 S.Ct. 1865 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, ... violates the Fourth Amendment.") (internal citation omitted); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir.1996).

### 1. Officer Ball

██ "Although handcuffs must be reasonably tight to be effective, ... overly tight handcuffing can constitute excessive force.... [I]n evaluating the reasonableness of handcuffing, a Court is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the [plaintiff's] pleas that the handcuffs were too tight; and 3) the degree of *injury to the wrists*." *Lynch ex rel. Lynch v. City of Mt. Vernon*, 567 F.Supp.2d 459, 468 (S.D.N.Y.2008) (emphasis in original) (internal citations and quotation marks omitted). When considering these factors, "[t]he question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Bryant v. City of New York*, 404 F.3d 128, 136 (2d

Cir.2005) (internal quotation marks omitted). Moreover, "[i]n order to sustain a claim for excessive force, the Plaintiff must establish through evidence, that the alleged use of force is objectively sufficiently serious or harmful enough to be actionable and, consequently, that the amount of force used was more than *de minim[i]s.*" *Phelps v. Szubinski,* 577 F.Supp.2d 650, 661–62 (E.D.N.Y.2008) (internal quotation marks omitted). "Simply placing a suspect in handcuffs and requiring him to keep his hands behind his back for transportation has been found not to give rise to a constitutional violation." *Scott v. County of Nassau,* No. 94–CV–4291, 1998 WL 874840, *5 (E.D.N.Y. Dec. 11, 1998).

For the purposes of this decision, the Court must resolve all factual ambiguities in favor of Ferraresso, the nonmovant. Ferraresso, in essence, contends that: (1) Officer Ball informed Ferraresso that he is a black belt in karate and stated "Don't mess with me," "You better do what I tell you," "Don't fool with me," and "I'm a tough guy"; (2) after Sergeant Mikan placed Ferraresso's right wrist in handcuffs, Officer Ball pulled, bended and twisted Ferraresso's left arm and wrist causing pain to his left hand and shoulder; (3) in response to Officer Ball twisting Ferraresso's left arm and applying the handcuff, Ferraresso asked, "Why are you doing that?"; (4) at no time during the course of the stop or arrest did Ferraresso physically threaten either of the officers or resist arrest; (5) at no time during the course of the stop or arrest did Ferraresso complain of any injuries to his wrist or shoulder; and (6) as a result of the handcuffing, Ferraresso was left with a red mark on his left wrist for one week, suffers from numbness in his left index finger, and tore his left rotator cuff. Given Ferraresso's deposition testimony, the Court assumes here that the left handcuff was too tight. Thus, the Court must look to whether Officer Ball ignored Ferraresso's complaints about the left handcuff, and whether Ferraresso suffered sufficient injuries to implicate the Fourth Amendment.

 Even construing the facts in the light most favorable to Ferraresso, the Court concludes that summary judgment is appropriate for Ferraresso's excessive force claim against Officer Ball. Ferraresso did not complain of any injuries, nor did he request medical attention, at any time during his interactions with the officers. Ferraresso never specifically informed Officer Ball or Sergeant Mikan that his left handcuff was too tight, nor did he ask them to remove the handcuffs. In addition, no reasonable finder of fact could conclude that Ferraresso's question, "Why are you doing that?," without more, would put the officers on notice that the left handcuff was too tight. This question did not mention feeling pain, and it did not indicate the suffering of an injury. It is not even clear that the question was related to handcuffs at all. From the Court's perspective, a reasonable police officer could conclude that Ferraresso was questioning why he was being arrested, not why the handcuffs were too tight. Thus, because Ferraresso has not demonstrated that the Defendants ignored his pleas that the left handcuff was too tight, his Fourth Amendment unreasonable force claim with regard to the left handcuff fails.

 Furthermore, turning to the evidence of injuries from the handcuffing, Ferraresso claims that he suffered injuries to his left wrist and left shoulder. Specifically, Ferraresso claims that "the left handcuff was so tight it cut off circulation in his left hand, that he had a red mark on his wrist for one week thereafter, and suffers the lasting injury of numbness in his left index finger." Ferraresso also claims that his "left arm was violently twisted tearing his rotator cuff." Nonetheless, Ferraresso never sought medical attention for his wrists at any time after

the incident. Ferraresso has not shown that he suffered a compensable injury to his wrists as a result of the handcuffing. *See Graham*, 490 U.S. at 396, 109 S.Ct. 1865.

 While Ferraresso appears to have suffered an injury to his left shoulder during the course of his arrest, "reasonable force does not become unconstitutional merely because it caused the plaintiff serious injury." *Gonzalez v. City of New York*, No. 98–CV–3084, 2000 WL 516682, at *4 (E.D.N.Y. Mar. 7, 2000) (citing *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). "Without additional allegations of excessive force or blatant disregard for preexisting injuries, complaints, or requests for medical treatment, the use of handcuffs has been found to be reasonable." *Scott*, 1998 WL 874840, at *5; *see Owens v. Colburn*, 860 F.Supp. 966, 972 (N.D.N.Y.1994). Although the Court does not doubt that Ferraresso's shoulder was injured during the course of his arrest, Officer Ball cannot be held liable for excessive force unless the force used in handcuffing Ferraresso went beyond that which is normally employed. There is no proof here that Officer Ball, by twisting Ferraresso's left arm and placing it behind his back, used force that would constitute a constitutional violation. *See Graham*, 490 U.S. at 396, 109 S.Ct. 1865 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, . . . violates the Fourth Amendment.") Indeed, Ferraresso admitted in his deposition that Officer Ball lifted up his left arm only as far as the chain between the left and right handcuffs would allow. Consequently, with regard to the Fourth Amendment claim against Officer Ball, the Defendants' motion for summary judgment is granted.

#### 2. Sergeant Mikan

 Ferraresso next alleges that Sergeant Mikan failed to intervene to stop the use of excessive force by Officer Ball. Specifically, Ferraresso claims that Sergeant Mikan, as Officer Ball's superior officer on the scene, had a realistic opportunity to intervene to prevent the use of excessive force. The Defendants respond that because there is no evidence to support Ferraresso's excessive force claim, Sergeant Mikan cannot be held liable for failure to intervene.

 It is true that "[a] police officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in h[er] presence by other officers." *Ricciuti v. N.Y. City Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (internal quotation marks omitted). "[T]he failure to intercede must be under circumstances making it objectively unreasonable for h[er] to believe that h[er] fellow officers' conduct did not violate [the plaintiff's clearly established constitutional] right rights." *Id.* Nonetheless, because the Court has found that Officer Ball did not violate Ferraresso's Fourth Amendment rights, Sergeant Mikan cannot be held liable for failing to intervene to prevent a violation of those rights. In addition, Ferraresso has presented no evidence that would suggest that Sergeant Mikan was aware of an overly-tight handcuff. Consequently, with regard to the Fourth Amendment claim against Sergeant Mikan, the Defendants' motion for summary judgment is granted.[1]

#### 3. Municipal Liability

Ferraresso next alleges that the Town of Granby, acting through Chief Watkins, had

---

**1.** Because the Court has found that Officer Ball and Sergeant Mikan did not violate Ferraresso's constitutional rights, it need not discuss qualified immunity. *See Eiden v. McCarthy*, 531 F.Supp.2d 333, 354 (D.Conn.2008).

policies, practices, and customs that caused the alleged violation of his constitutional rights. According to Ferraresso, there are factual issues as to the Town's and Chief Watkins's liability for failure to train its officers in the use of reasonable force during a DUI stop. The Defendants respond that Ferraresso cannot establish that the town of Granby and Chief Watkins are liable under § 1983.

 "[M]unicipalities [are] liable under § 1983 to be sued as 'persons' within the meaning of that statute, when the alleged unlawful action implemented or was executed pursuant to a governmental policy or custom." *Reynolds v. Giuliani,* 506 F.3d 183, 190 (2d Cir.2007) (citing *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy [or custom] of the municipality caused the constitutional injury." *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir.2008) (citing *Monell,* 436 U.S. at 690–91, 98 S.Ct. 2018). "The fifth element-the 'official policy' element-can only be satisfied where a plaintiff proves that a 'municipal policy of some nature caused a constitutional tort.'" *Id.* (quoting *Monell,* 436 U.S. at 691, 98 S.Ct. 2018). "[A] municipality cannot be found liable under § 1983 for acts of its employees by application of the doctrine of respondeat superior." *Id.*

 Ferraresso's contention here is that the Town failed to properly train officers in the use of reasonable force during a DUI stop. "The failure to train or supervise city employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employ-ees interact." *Wray v. City of New York,* 490 F.3d 189, 195 (2d Cir.2007) (citing *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). To establish deliberate indifference, a plaintiff must show that: (1) a policymaker knows to a "moral certainty" that city employees will confront a particular situation; (2) the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or there is a history of employees mishandling the situation; and (3) the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. *Id.* at 195–96. "[A] policymaker does not exhibit deliberate indifference by failing to train employees for rare or unforeseen events." *Id.* at 196 (internal quotation marks omitted). "[W]here ... a city has a training program, a plaintiff must ... identify a special deficiency in the city's training program and establish that th[e] deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Id.* (internal quotation marks omitted).

 The Court already has found that Ferraresso did not suffer any constitutional tort. As a result, his constitutional claim against the Town and Chief Watkins necessarily fails as well. Additionally, the Defendants have demonstrated that there is no genuine issue of material fact regarding Ferraresso's failure to train claim. The Defendants have offered evidence that Sergeant Mikan and Officer Ball have received training as mandated by all applicable standards through the police academy. Furthermore, Ferraresso has not identified a specific deficiency in the Town's training program. Ferraresso also did not take Chief Watkins's deposition, has not engaged any experts related to this claim, and has not identified any conclusive evidence of a deficiency in Sergeant Mikan's or Officer Ball's training

that could have caused Ferraresso's alleged constitutional injuries.[2] In short, Ferraresso has offered no evidence that the Granby Police Department or Town of Granby had any custom, policy, or practice promoting conduct such as that alleged in his complaint. Consequently, with regard to the claim against the Town and Chief Watkins, the Defendants' motion for summary judgment is granted.[3]

## IV. CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment (**dkt. # 31**) is **GRANTED,** and the motion to strike (**dkt. # 39**) is **DENIED. Judgment in favor of defendants the Town of Granby, Chief David L. Watkins, Sergeant Doreen Mikan and Officer Jameson Ball shall enter on all claims in the complaint. The clerk shall close this file.**

**SO ORDERED.**

---

2. Ferraresso argues that "[t]he Town of Granby and its Chief of Police have failed to point to any evidence that it properly trains its officers on the reasonable use of force during an [sic] DUI stop." (Dkt. # 37, Mem. p. 18.) The Court notes, however, that Ferraresso, as the plaintiff, carries the burden of proving his claims. To prevail on his *Monell* claim, he must point to evidence that the Town did not properly train its officers. Ferraresso cannot shift this burden to the Town by stating that the Town has failed to present evidence of proper training.

Ferraresso then points to the deposition of Officer Ball in an attempt to show that the Town and Chief Watkins did not properly train its officers. This testimony does not support Ferraresso's claim. Officer Ball testified that, on two occasions, he received DUI training at the police academy, but he never had any further DUI training. Ferraresso has not demonstrated, however, that for every conceivable type of traffic stop, there must be separate, individual training regarding the use of force in making an arrest. As noted above, the reasonableness standard applies to the use of force for all arrests, and what is reasonable for one DUI stop might not necessarily be reasonable for another DUI stop. In addition, Ferraresso consistently has maintained that he did not resist arrest and that he was compliant with the officers' instructions. As such, the Court cannot fathom why, with regard to the use of force, a distinction should be made between Ferraresso's DUI arrest and the non-DUI arrest of some other person who does not resist arrest.

3. The Court points out that, even if it had not considered Ferraresso's state law claims to be abandoned, it would decline to exercise jurisdiction over those claims because summary judgment has been granted on all his federal claims. *See Peruta v. Town of Rocky Hill,* 640 F.Supp.2d 186, 198–99 (D.Conn.2009).